UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

════════════════════════════════

CITIZENS AGAINST CASINO GAMBLING IN ERIE
COUNTY (Joel Rose and Robert Heffern, as
Co-Chairpersons), REV. G. STANFORD BRATTON,
D. MIN., EXECUTIVE DIRECTOR OF THE NETWORK
OF RELIGIOUS COMMUNITIES, NETWORK OF RELIGIOUS
COMMUNITIES, NATIONAL COALITION AGAINST
GAMBLING EXPANSION, PRESERVATION COALITION
OF ERIE COUNTY, INC.,  COALITION AGAINST GAMBLING
IN NEW YORK - ACTION, INC., THE CAMPAIGN FOR
BUFFALO, HISTORY ARCHITECTURE AND CULTURE,
ASSEMBLYMAN SAM HOYT, ERIE COUNTY LEGISLATOR
MARIA WHYTE, JOHN MCKENDRY, SHELLEY
MCKENDRY, DOMINIC J. CARBONE, GEOFFREY D.
BUTLER, ELIZABETH F. BARRETT, JULIE CLEARY,
ERIN C. DAVISON, ALICE E. PATTON, MAUREEN
C. SCHAEFFER, DORA RICHARDSON, and
JOSEPHINE RUSH,

                    Plaintiffs,

v.                                          **DECISION AND ORDER**
                                            09-CV-0291S

PHILIP N. HOGEN, in his Official Capacity as Chairman
of the National Indian Gaming Commission, the
NATIONAL INDIAN GAMING COMMISSION, the
UNITED STATES DEPARTMENT OF THE INTERIOR,
KEN SALAZAR, in his Official Capacity as
the Secretary of the Interior, and BARACK OBAMA, in his
Official Capacity as President of the United States

                    Defendants.

════════════════════════════════

## I. INTRODUCTION

On March 31, 2009, Plaintiffs commenced this action challenging the legality of a gambling casino operated by the Seneca Nation of Indians ("SNI") in the City of Buffalo on land it acquired in 2005 (the "Buffalo Parcel"). Plaintiffs allege that Defendants, all government officials and agencies, acted illegally, arbitrarily, capriciously, and not in accordance with law when they determined the Buffalo Parcel is gaming-eligible "Indian land," and approved the SNI's second amended ordinance authorizing gambling on the Parcel. Plaintiffs also contend that legislation and regulations Defendants relied on are unconstitutional or were illegally adopted.

There are two motions before the Court: the Seneca Nation of Indians' Motion to Intervene and for Leave to File Proposed Answer (Docket No. 10), and Defendants' Motion to Dismiss the first of Plaintiffs' three claims for relief (Docket No. 11). Both motions are fully briefed, and the Court has determined that oral argument is not necessary. For the reasons discussed below, Defendants' Motion to Dismiss Plaintiffs' first claim for relief is granted in part, and denied in part, and the SNI's Motion to Intervene is denied.

## II. BACKGROUND

This is the third lawsuit commenced by largely the same plaintiffs, who seek to bar the SNI from operating a gambling facility in Buffalo, New York. Familiarity with the underlying factual and legal background is presumed, and will be discussed only to the extent necessary to resolve the pending motions. A brief procedural history follows.

The first action, filed in January 2006, challenged various decisions by the Secretary of the Interior (the "Secretary") and the Chairman of the National Indian Gaming Commission (the "NIGC") that permitted gambling on the Buffalo Parcel. Citizens Against Casino Gambling in Erie County v. Kempthorne, 06-CV-00001-WMS (CACGEC I). In

January 2007, the Court found there was no indication the NIGC Chairman had considered the threshold jurisdictional question of whether the SNI's proposed gambling facility in Buffalo would be sited on gaming-eligible Indian lands. The Court vacated the NIGC Chairman's decision to approve the SNI's gaming ordinance, and remanded to provide the NICG an opportunity to determine, in the first instance, whether the Buffalo Parcel is gaming-eligible Indian land under the Indian Gaming Regulatory Act (the "IGRA"). 471 F. Supp. 2d 295, 326-27 (W.D.N.Y. 2007), *amended in part on reconsideration*, 2007 U.S. Dist. LEXIS 29561 (W.D.N.Y. Apr. 20, 2007).

Thereafter, in July 2007, the NIGC Chairman determined that the Buffalo Parcel is gaming-eligible Indian land, and approved an amended ordinance enacted by the SNI on June 9, 2007. The second lawsuit was commenced on July 12, 2007, challenging, *inter alia*, the NIGC Chairman's conclusions. Citizens Against Casino Gambling in Erie County v. Hogen, 07-CV-00451-WMS (CACGEC II). In that case, the Court concluded the Buffalo Parcel is Indian land, but is not gaming eligible under the IGRA, and again vacated the NIGC Chairman's approval of the SNI's ordinance. 2008 U.S. Dist. LEXIS 52395, at *209 (W.D.N.Y. July 8, 2008).[1]

On August 25, 2008, new Department of the Interior regulations took effect relative to "Gaming on Trust Lands Acquired After October 17, 1988"—*i.e.*, relating to interpretation of certain IGRA provisions at issue in CACGEC I and CACGEC II. 73 Fed. Reg. 2934 (May 20, 2008); 73 Fed. Reg. 35579 (June 24, 2008). Thereafter, the SNI submitted to the NIGC a second amended gaming ordinance for the Buffalo Parcel. On January 20, 2009, the NIGC Chairman approved the ordinance, concluding that, under the new regulations,

---

[1] Both CACGEC I and CACGEC II have been appealed to the Second Circuit. Defendants have moved to stay the appeals until final judgment is entered in the current action. That motion was granted on March 12, 2010.

the Buffalo Parcel is gaming-eligible Indian land. This lawsuit followed.

In their first claim for relief, Plaintiffs contend the Buffalo Parcel is not "Indian land," but rather, sovereign soil of the State of New York. They advance three discrete arguments in support of their claim:

(A) the Seneca Nation Settlement Act ("SNSA"), which permitted the SNI to purchase the Buffalo Parcel and to have it held in restricted fee status, violates the Tenth Amendment because it enabled the "taking" of land in Western New York absent the consent of New York State;

(B) the Tribal-State Compact between the SNI and the State of New York, deemed approved in November 2002 and authorizing the SNI to conduct gaming on "Indian land," does not apply to the Buffalo Parcel, which was not acquired until 2005; and

(C) "Indian land," within the meaning of the IGRA, requires that the land be within the limits or boundaries of an existing reservation, which the Buffalo Parcel is not.

(Docket No. 1, ¶¶ 94-109.)

Defendants have moved to dismiss this first claim in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[2] The SNI has moved to intervene in this action, under Fed. R. Civ. P. 24(b), and for leave to file its proposed answer in intervention, in order to defend its sovereignty over the Buffalo Parcel.[3]

---

[2] Defendants have filed a memorandum of law in support (Docket No. 11-2), with exhibits (Docket No. 11-3), and a reply memorandum of law (Docket No. 20.) Plaintiffs filed a memorandum of law in opposition (Docket No. 17), and the affidavit of Cornelius D. Murray, Esq., sworn to July 15, 2009, with exhibits A - C (Docket No. 17-2).

[3] The SNI has filed a memorandum of law in support (Docket No. 10-3), with attachment A (Docket No. 10-4), a proposed answer (Docket No. 10-5), and a reply memorandum of law (Docket No. 18.) Plaintiffs filed a memorandum in opposition. (Docket No. 14.) The SNI states that Defendants do not oppose its motion. Defendants did not file a response.

## III. DISCUSSION

**A.      The Government's Motion to Dismiss**

Defendants urge that this Court can rule on each argument advanced in support of Plaintiffs' first claim as a matter of law, without referring to the not-yet-filed administrative record.  They seek dismissal with respect to each of Plaintiffs' arguments on the grounds that:

> (A) Plaintiffs' challenge to the constitutionality of the SNSA is time-barred, they lack standing to challenge the constitutionality of the SNSA, and they fail to state a claim for relief;
>
> (B) Plaintiffs' challenge to the Tribal-State Compact does not fall within the Administrative Procedure Act's ("APA") waiver of sovereign immunity and the associated statute of limitations; and
>
> (C) Plaintiffs are barred by collateral estoppel and *res judicata* from relitigating the issue of whether the Buffalo Parcel is "Indian land."

In addition, Defendants urge, as they did in CACGEC I and CACGEC II, that the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a, preserves the Government's immunity from suit with regard to Plaintiffs' first claim for relief.

**1.      *Standards of Review***

a.      *Rule 12(b)(1)*

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the burden of establishing the existence of federal jurisdiction.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

Where, as here, the jurisdictional challenges are raised at the pleading stage, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor.  Sharkey v. Quarantillo, 541 F.3d 75, 83 (2d Cir. 2008).

It is "presume[d] that general [fact] allegations embrace those specific facts that are necessary to support the claim." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990) (alterations added). The court also may consider affidavits and other evidence outside the pleadings to resolve the jurisdictional issue, but it may not rely on conclusory or hearsay statements contained in affidavits. J.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004), cert. denied, 544 U.S. 968, 125 S. Ct. 1727, 161 L. Ed. 2d 616 (2005). Indeed, courts "must" consult factual submissions "if resolution of a proffered factual issue may result in the dismissal of the complaint for want of jurisdiction." Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 n.6 (2d Cir. 2001).

"In assessing whether a plaintiff has sufficiently alleged or proffered evidence to support jurisdiction . . . , a district court must review the allegations in the complaint, the undisputed facts, if any, placed before it by the parties, and—if the plaintiff comes forward with sufficient evidence to carry its burden of production on this issue—resolve disputed issues of fact . . . ." Id. at 140.

b. *Rule 12(b)(6)*

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12 (b)(6). Federal pleading standards are generally not stringent. Rule 8 requires only a short and plain statement of a claim. FED. R. CIV. P. 8(a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544,127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007) (internal quotation marks and alteration omitted).

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See* Roth v. Jennings, 489 F.3d 499, 510

(2d Cir. 2007); <u>Goldstein v. Pataki</u>, 516 F.3d 50, 56 (2d Cir. 2008).  However, to withstand a motion to dismiss, a plaintiff's "allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  <u>Twombly</u>, 550 U.S. at 555 (internal quotation marks, citations, and alterations omitted).  Legal conclusions are not afforded the same presumption of truthfulness.  *See* <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2008)  ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

When determining the sufficiency of a plaintiff's claim for Rule 12(b)(6) purposes, courts may consider the factual allegations in the plaintiff's complaint, documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents that were either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit.   <u>Brass v. American Firm Technologies, Inc.</u>, 987 F.2d 142, 150 (2d Cir. 1993); *see also*, <u>Cortec Ind., Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 47-48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960, 112 S. Ct. 1561, 118 L. Ed. 2d 208 (1992) (documents must be integral to the complaint).

### 2.    *The Constitutionality of the Seneca Nation Settlement Act*

Plaintiffs first allege that Congress exceeded its powers in enacting the SNSA "by essentially delegating to another sovereign entity, namely the SNI, the power to designate a parcel of land anywhere in a vast area of Western New York that was not then under the governmental control or jurisdiction of the SNI for the creation of a separate sovereign nation." (Docket No. 1 ¶ 5, *also* ¶ 97.)  According to Plaintiffs, Congress has no power to create new Indian land by taking it from existing states (or allowing the SNI to do so) and thereby depriving the State and local governments of sovereignty.  (*Id*. ¶¶ 6-7, 96.)  Thus,

they conclude, the SNSA is unconstitutional "to the extent that it might be interpreted to create new sovereign Indian land via the restricted fee process . . . ." (*Id.* ¶ 98, *also* ¶¶ 68, 108.)

a.   *Timeliness*

Section 1774g of the SNSA provides, in pertinent part, that:

Notwithstanding any other provision of law, any action to contest the constitutionality or validity under law of this subchapter shall be barred unless the action is filed on or before the date which is 180 days after November 3, 1990.

Based on this provision, Defendants urge that any challenge to the constitutionality or validity of the SNSA filed after May 2, 1991 is untimely, and Plaintiffs' 2009 lawsuit clearly is time-barred.  As Defendants correctly note, the Supreme Court has held that "[a] constitutional claim can become time-barred just as any other claim can."  Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands, 461 U.S. 273, 292, 103 S. Ct. 1811, 75 L. Ed. 2d 840 (1983); *see also*, Seneca Nation of Indians v. New York, 206 F. Supp. 2d 448, 534 (W.D.N.Y. 2002) (citing Block and acknowledging that the United States can establish a statute of limitations for a constitutional claim)).  This Court agrees that a challenge to the SNSA's constitutionality is time-barred.

But in their opposing memorandum of law, Plaintiffs deny they are questioning the constitutionality of the SNSA.  Rather, they say, their challenge is to the NIGC Chairman's January 20, 2009 decision to approve the SNI's second amended gaming ordinance. Plaintiffs urge that the NIGC Chairman "dispensed with the second prong of [the IGRA 'Indian land'] test, *i.e.*, whether the Tribe also exercised governmental power over the land," when he determined that the Buffalo Parcel's restricted fee status renders it "Indian country" within the meaning of 18 U.S.C. 1151, a statute that pertains to criminal jurisdiction.  According to Plaintiffs, the NIGC Chairman's 2009 analysis involved an

interpretation of the SNSA that, for the first time, raised a constitutional issue under the Tenth Amendment. From there, they conclude that a six-year statute of limitations governs their claim, running from the date of the NIGC Chairman's determination.

Plaintiffs' explanation of their claim is not consistent with the Complaint. Subpart "A" of Plaintiffs' first claim for relief (Docket No. 1 ¶¶ 94-98) does not refer to the January 20, 2009 NIGC decision, the IGRA, or 18 U.S.C. § 1151. Likewise, preceding fact allegations regarding the NIGC's January 20, 2009 decision, incorporated into subpart "A" by reference, make no mention of the NIGC having interpreted or applied the SNSA. (*Id.* ¶¶ 92-93.) Thus, even under the most liberal construction of the Complaint, the claim Plaintiffs now purport to make simply does not appear in their pleading.

Plaintiffs' attempt to morph their argument titled "The Seneca Nation Settlement Act is Unconstitutional in Part," into something else entirely, via a memorandum of law, is both improper and unavailing. Plaintiffs could have amended their Complaint as of right in response to Defendants' Motion to Dismiss, but chose not to do so. FED. R. CIV. P. 15(a). They now disavow their plainly-stated facial challenge to the constitutionality of the SNSA. This Court construes Plaintiffs' disavowal as withdrawing their first argument in support of their first claim for relief.[4] Accordingly, dismissal of subpart "A" of their first claim, which asserts that the Buffalo Parcel is not Indian land because the SNSA is unconstitutional in part, is warranted.

Even were the Court to accept both Plaintiffs' restatement of subpart "A" and their related timeliness argument, the restated claim would be futile. In essence, Plaintiffs now seek to claim that the NIGC Chairman incorrectly concluded that land held in "restricted

---

[4] Indeed, Plaintiffs expressly confirm in their opposing memorandum that "[t]his action does not challenge the SNSA, or its purpose, or the manner in which Congress sought to achieve that purpose." (Docket No. 17 at 8.)

fee" status under the SNSA is "Indian land" under the IGRA, and thus failed to apply the second prong of the IGRA's "Indian land" test.

As an initial matter, I note that this argument, as presented, challenges the NIGC Chairman's purported misinterpretation or misapplication of the IGRA, not the SNSA. Beyond that, the argument fails because it blatantly misstates the NIGC Chairman's January 20, 2009 decision.

This Court determined, in <u>CACGEC II</u>, that the Buffalo Parcel, which obtained restricted fee status under the SNSA, is "Indian country" under 18 U.S.C. § 1151. Primary jurisdiction over land that is Indian country rests with the Federal Government and the Indian tribe, not with the States.

For purposes of the IGRA, "Indian lands" include:

(A) all lands within the limit of any Indian reservation; and

(B) any lands title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power.

25 U.S.C. § 2703(4); *see also*, 25 C.F.R. § 502.12. So, under the IGRA, it is not enough that restricted fee land is Indian country over which a tribe *can* exert primary jurisdiction; to be "Indian land," the tribe *must* affirmatively exercise its governmental power.

The NIGC Chairman's January 20, 2009 determination states, in relevant part, that:

As restricted fee land, the Buffalo Parcel is held by the [SNI] subject to restriction by the United States against alienation and, therefore, conforms to the first requirement of IGRA's *Indian Lands* definition. . . . .

[O]nce the Secretary of the U.S. Department of the Interior allowed the Buffalo Parcel to pass into restricted fee pursuant to the SNSA, the land became Indian country within the meaning of 18 U.S.C. § 1151. . . . . Accordingly, the [SNI] possesses jurisdiction to exercise governmental authority over the Buffalo Parcel.

In order for the Buffalo Parcel to qualify as Indian lands under IGRA, the

[SNI] must also exercise present-day, governmental authority over the land. . . . . Since acquiring the land in 2005, the [SNI polices the Parcel, has fenced and posted the site, and has] enacted several ordinances and resolutions applying its laws to the Parcel. . . . . Because the land described in the 2008 ordinance is held in restricted fee and the [SNI] exercises governmental authority over it, the land meets IGRA's *Indian Lands* definition.

Docket No. 17-2 at 7, 9-10 (citation omitted, emphasis in original, alterations added)).

While Plaintiffs may disagree with the NIGC Chairman's conclusions, it is evident he considered, first, whether the SNI possesses jurisdiction over the Buffalo Parcel, and second, whether the SNI is exercising that authority. So, to the extent Plaintiffs seek to alter their first argument to claim that the NIGC Chairman failed to apply the second prong of the IGRA Indian land test, their proposed amendment is directly contradicted by the document on which they rely. Accordingly, amendment would be futile.

Subpart "A" of Plaintiffs' first claim for relief is dismissed, based on their withdrawal of the claim stated in the Complaint, and alternatively, the untimeliness of the stated claim.

### 3. *The Tribal-State Compact's Applicability to the Buffalo Parcel*

At subpart "B" of their first claim for relief, Plaintiffs urge that the Tribal-State Compact between the SNI and the State of New York, deemed approved in November 2002 by the Secretary's inaction, does not apply to the Buffalo Parcel. (Docket No. 1 ¶ 100.) Plaintiffs claim that the Secretary may approve a compact under the IGRA only if it authorizes gambling on "Indian land," and because no such land existed in Buffalo at the time the Compact was deemed approved, the Compact could not have authorized a gambling facility on land the SNI hoped to acquire in Buffalo at some future date. (*Id*. ¶ 101.) Plaintiffs conclude by stating that land cannot attain restricted fee status unless it first is under the governmental control of an Indian tribe. (*Id*. ¶ 102.)

Paragraph 102 seems to refer, once again, to the purported unconstitutionality of

the SNSA, which permits the SNI to first acquire land in fee simple (where primary jurisdiction remains with the State), and then seek "restricted fee" status as a means of obtaining jurisdiction. Because Plaintiffs' challenge to the SNSA's constitutionality already has been withdrawn, paragraph 102 of the Complaint also is deemed withdrawn.

As for paragraphs 100 and 101, Defendants read Plaintiffs' second argument as a challenge to the validity of the Tribal-State Compact, and contend that the Administrative Procedure Act ("APA") does not waive the Government's sovereign immunity with respect to this matter. The reason, according to Defendants, is that the Secretary's decision to take no action on the Compact—*i.e.*, her inaction, by which the Compact became effective—is not a "final agency action" within the meaning of the APA. 5 U.S.C. § 704. Defendants go on to argue that even were the challenged non-action reviewable, it is subject to a six-year statute of limitations. Polanco v. United States DEA, 158 F.3d 657, 652-53 (2d Cir. 1998) (finding six-year statute of limitations of 28 U.S.C. § 2401(a) applies to actions brought under the APA). Because the Compact went into effect on November 12, 2002, say Defendants, the relevant date for statute of limitations purposes is November 12, 2008. Thus, even assuming the Court has jurisdiction over this claim, a challenge to the validity of the Compact, filed on March 31, 2009, is time-barred.

In response, Plaintiffs concede that, were they challenging the validity of the Compact, their claim would be time-barred. (Docket No. 17 at 23.) Once again, however, they repudiate the most straightforward and logical reading of their allegations. According to Plaintiffs, they are not challenging the validity of the Compact, but rather, the NIGC Chairman's January 20, 2009 approval of the SNI's second amended gaming ordinance for the Buffalo Parcel. Plaintiffs presume that "Chairman Hogen must necessarily have

rendered a conclusion that the Compact did apply" to the Buffalo Parcel,[5] and conclude that his decision is "reviewable within the context of this APA action."  (*Id*. at 23.)

Plaintiffs' explanation of their claim is not consistent with the Complaint.  Subpart "B" of Plaintiffs' first claim for relief (Docket No. 1 ¶¶ 100-102) makes no reference to the January 20, 2009 NIGC decision.  Likewise, preceding fact allegations relating to the NIGC's decision, incorporated into subpart "B" by reference (*Id*. ¶ 99), make no mention of the Compact.[6]  (*Id*. ¶¶ 92-93.)  Thus, even under the most liberal construction of the Complaint, no statement of the purported claim exists in their pleading.

To the extent Plaintiffs are attempting to amend subpart "B," via a memorandum of law, their approach is improper and unavailing.  Plaintiffs had an opportunity to amend their Complaint as of right in response to Defendants' Motion to Dismiss, but chose not to do so.  FED. R. CIV. P. 15(a).  They now deny they are challenging the validity of the Compact's authorization of gambling on not-yet-purchased land in Buffalo.  The Court construes Plaintiffs' denial as withdrawing their second argument in support of their first claim for relief.  Accordingly, dismissal of subpart "B" of their first claim, which asserts that the Secretary improperly permitted the allegedly unlawful Compact to become effective, is warranted.  And even assuming Plaintiffs do not intend a withdrawal, as they concede, their stated claim is time-barred.

Were the Court to consider Plaintiffs' improper attempt to amend subpart "B," their proposed claim is futile because it is contradicted by the documents they refer to and rely

---

[5]  The Court notes that the applicability of the Compact to the Buffalo Parcel has no bearing on the purported subject of the first claim for relief—*i.e.*, whether the Buffalo Parcel is "Indian land" within the meaning of the IGRA.

[6]  Plaintiffs' fact allegations relate to the NIGC Chairman's conclusions that: (1) 25 U.S.C. § 2719(a) applies only to land held in trust, a conclusion challenged in their second claim for relief, and (2) the Buffalo Parcel was acquired as part of the settlement of a land claim under 25 U.S.C. § 2719(b)(1)(B), a conclusion challenged in their third claim for relief.

on in their Complaint. Plaintiffs' contention that "Chairman Hogen must necessarily have rendered a conclusion that the Compact did apply" to the Buffalo Parcel appears to imply two things: (1) that the Compact does not authorize gambling on land the SNI sought to acquire in Buffalo, and (2) the NIGC Chairman improperly extended the reach of the Compact to the later-purchased Buffalo Parcel. These implications are contrary to the Compact, which does authorize gambling "at a location in the City of Buffalo to be determined by the Nation" (Docket No. 11-3 at 15, ¶ 11(b)), and to the NIGC Chairman's January 20, 2009 determination, which makes no mention of, much less renders conclusions about, the legal sufficiency of the Compact. (Docket No. 17-2). Because Plaintiffs' proposed claim is directly contradicted by the relevant documents, the suggested amendment would be futile.

Subpart "B" of Plaintiffs' first claim for relief is dismissed, based on their withdrawal of the claim stated in the Complaint and, alternatively, the conceded untimeliness of the stated claim.

### 4.  *Restricted Fee Status and "Indian Land"*

Plaintiffs allege in subpart "C," as they did in <u>CACGEC II</u>, that the Buffalo Parcel is neither "Indian country," within the meaning of 18 U.S.C. § 1151, nor "Indian land" under the IGRA. (Docket No. 1 ¶ 104.) Plaintiffs urge, as they did in <u>CACGEC II</u>, that to be Indian land under the IGRA, land must be within the limits or boundaries of an existing reservation. (*Id.* ¶ 109.) Thus, they claim, Defendants "acted illegally, arbitrarily, capriciously and not otherwise in accordance with law, in approving or causing to be approved the January 20, 2009 ordinance insofar as they determined that the Buffalo Parcel is 'Indian land.'" (*Id*. ¶ 108.)

Defendants argue for dismissal of this claim based on collateral estoppel and *res*

*judicata*.[7]  In opposition, Plaintiffs urge that neither doctrine applies.

        a.    *Collateral Estoppel*

Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.  Montana v. United States, 440 U.S. 147, 153, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979).  "Collateral estoppel, or issue preclusion, applies where: (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."  Uzdavines v. Weeks Marine, Inc., 418 F.3d 138, 146 (2d Cir. 2005) (citations and internal quotation marks omitted).  Plaintiffs urge that none of the four factors exist with respect to their claim that the Buffalo Parcel is not "Indian land."

Among other things, Plaintiffs contend that they have not yet had a full and fair opportunity to litigate the "Indian land" issue because, while they have appealed this portion of the CACGEC II decision, they have not yet obtained appellate review.  The Second Circuit has held that  "issue preclusion cannot apply[ ] 'if there is an inability to obtain [appellate] review or there has been no review, even though an appeal has been taken.'" Aviall, Inc. v. Ryder Sys., Inc., 110 F.3d 892, 897 (2d Cir. 1997) (quoting Johnson v. Watkins, 101 F.3d 792, 795 (2d Cir. 1996) (alteration in original); *see also*, Gelb v. Royal Globe Ins. Co., 798 F.2d 38, 44 (2d Cir. 1986) ("although failure to appeal does not prevent

---

[7]  Although Defendants appear to have advanced this argument with respect to the first claim in its entirety, the Court addresses it with respect to subpart "C" only in light of the facts that Plaintiffs have withdrawn their challenge to the constitutionality of the SNSA (subpart "A") and, as already noted, the Tribal-State Compact's applicability to the Buffalo Parcel (subpart "B") has no bearing on whether the Buffalo Parcel meets the IGRA's "Indian land" requirements.  Additionally, subpart "B" is subject to dismissal as untimely.

preclusion, inability to obtain appellate review, or the lack of such review once an appeal is taken, does prevent preclusion").

Defendants contend, in reply, that Plaintiffs withdrew their appeal from active consideration, and that any failure to obtain appellate review is therefore self-inflicted. This Court takes judicial notice of the following. The parties jointly withdrew their respective appeals from consideration until December 4, 2009, and expressly agreed that their withdrawal would not operate as a dismissal. Docket Nos. 08-5219 and 08-5257 (granted July 21, 2009). Prior to December 4, 2009, Plaintiffs sought to reactivate their appeal, which was reinstated on December 17, 2009. *Id*. On December 21, 2009, Defendants moved to stay the appeals "until 60 days after final judgment in [this action]." *Id.* The Second Circuit granted Defendants motion to stay on March 12, 2010 and, as a result, Plaintiffs will not obtain appellate review until this case is concluded. *Id.*; *also* Docket No. 07-2610.

Even had Defendants pointed to authority suggesting that a delay in the appellate court impacts the preclusion analysis—which they have not—at this juncture, Plaintiffs' inability to obtain review is not "self-inflicted." Although it may seem incongruous that Plaintiffs can receive another "bite at the apple" on a question treated exhaustively in CACGEC II, the posture of this case and the parties' appeals appears to dictate that result. In light of this conclusion, there is no need to consider Plaintiffs' arguments with regard to each of the remaining factors, and Defendants' motion to dismiss "subpart C" based on collateral estoppel is denied.

  b.  *Res Judicata*

Under *res judicata*, or claim preclusion, "a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same

issues as the earlier suit.'" <u>Taylor v. Sturgell</u>, 553 U.S. 880, ___, 128 S. Ct. 21621, 2171, 171 L. Ed. 2d 155 (2008) (quoting <u>New Hampshire v. Maine</u>, 532 U.S. 742, 748, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)).  A first judgment generally will have preclusive effect where the transaction or connected series of transactions at issue in both suits is the same—that is, where the same evidence is needed to support both claims, and where the facts essential to the second were present in the first.  <u>SEC v. First Jersey Sec., Inc.</u>, 101 F.3d 1450, 1463-64 (2d Cir. 1996) (citations and quotation marks omitted).  "If the second litigation involved different transactions, and especially subsequent transactions, there generally is no claim preclusion."  <i>Id.</i> at 1464 (citations omitted).

After articulating general principles of <i>res judicata</i>, Defendants state it is "clear that both cases involve the same 'claims' by Plaintiffs, so as to be barred."  Docket No. 11-2 at 19.

Plaintiffs argue that claim preclusion does not apply because <u>CACGEC II</u> challenged the NIGC's approval of the SNI's amended gaming ordinance, whereas this action challenges the NIGC"S approval of the SNI's second amended gaming ordinance, which did not exist and had not been submitted for administrative approval when <u>CACGEC II</u> was decided.

In reply, Defendants merely refer again to the generalized argument in their initial memorandum.

"The party claiming <i>res judicata</i> bears the burden of proving that the second action is barred, and it is not 'dispositive that the two proceedings involved the same parties, similar or overlapping facts, and similar legal issues.'" <u>Carvel v. Franchise Stores Realty Corp.</u>, 08-CV-8938, 2009 U.S. Dist. LEXIS 113410, at *11 (S.D.N.Y. Dec. 1, 2009). Defendants have failed to meet their burden here, and their motion to dismiss subpart "C"

based on *res judicata* must be denied.

### 5. *The Quiet Title Act*

Relying on the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a, Defendants contend, as they did in CACGEC I and CACGEC II, that the Court lacks jurisdiction over Plaintiffs' first claim because the United States has not waived its sovereign immunity with regard to the IGRA "Indian land" question. This Court recognizes that Defendants seek to preserve their argument, and note that they have not offered any supporting argument or authority the Court has not already fully considered at least once and, in some instances, several times. For the reasons set forth in CACGEC I and CACGEC II, the Court finds that the QTA does not divest it of jurisdiction over this action. Accordingly, Defendants' motion to dismiss on this basis is denied.

### B. The Seneca Nation of Indian's Motion to Intervene

The SNI has moved for permissive intervention under Rule 24(b) of the Federal Rules of Civil Procedure, which provides in relevant part that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B). In exercising its discretion, a district court must consider whether granting the request "will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* 24(b)(3); *see* In re Holocaust Victim Assets Litig., 225 F.3d 191, 202 (2d Cir. 2000). "'Additional relevant factors include the nature and extent of the intervenors' interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'" Lovely H. v. Eggleston, 05-CV-6920, 2006 U.S. Dist. LEXIS 83424, at *8 (S.D.N.Y. Nov. 15, 2006)

(quoting H.L. Hayden Co. v. Siemens Medical Sys., Inc., 797 F.2d 85, 89 (2d Cir. 1986)). The trial court has broad discretion to grant or deny permissive intervention. United States Postal Service v. Brennan, 579 F.2d 188, 192 (2d Cir. 1978).

Here, the SNI states it is seeking to intervene "in order to defend its sovereignty over its Buffalo Creek Territory, its governmental economic and social interests in the development and use of that Territory, and its interests in the continuing validity of laws, regulations and other legislative and administrative actions significant to the Nation's use of its Buffalo Creek Territory." (Docket No. 10-1). The SNI proposes to limit its intervention and consequent waiver of sovereign immunity to litigation of the three claims for relief specified in Plaintiffs' Complaint.[8]

In its motion, the SNI contends that all factors relevant to permissive intervention weigh strongly in its favor. In contrast, its says, denying the motion would prevent the SNI from fully participating in briefing and oral argument, and from seeking stays of and appealing any adverse decisions. Plaintiffs urge that none of the factors weighs in favor of granting the SNI's motion. Each factor is examined below.

### 1.    *Timeliness*

When determining whether a motion to intervene is timely, courts may consider: (1) the length of time the applicant knew of its interest but failed to intervene, (2) prejudice to existing parties from the delay, (3) prejudice to the applicant if the motion is denied, and (d) the presence of any unusual circumstances militating for or against a finding of timeliness. Long Island Trucking v. Brooks Pharm., 219 F.R.D. 53, 54-55 (E.D.N.Y. 2003); Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 182 (2d Cir. 2001).

---

[8]  The Court already has dismissed subparts A and B of Plaintiffs' first claim for relief. Nevertheless, subpart C remains, and it encompasses the question identified by the SNI with regard to its proposed intervention on the first claim—*i.e.*, "whether . . . the Buffalo Creek Territory qualifies as 'Indian lands' under IGRA." (Docket No. 10-3 at 2.)

The SNI asserts that it promptly moved to intervene in this action within the time allowed for Defendants to file a responsive pleading or a motion. Plaintiffs, in turn, characterize the motion as "gamesmanship," noting the SNI's longstanding participation as *amicus curiae* with respect to the very issues on which it now seeks to intervene.

Although CACGEC I, CACGEC II, and the instant action challenge different agency determinations, each lawsuit has been predicated on Plaintiffs' assertions that the Buffalo Parcel: (1) does not qualify as "Indian land" under the IGRA, (2) is subject to the after-acquired lands prohibition against gaming, and (3) does not fall within the "settlement of a land claim" exception to the prohibition. These are precisely the questions on which the SNI seeks to intervene.

The Court agrees that the SNI has been aware of its interest with regard to these issues since in or about January 2006, and that it chose not to seek permission to intervene until some three and one-half years later, in June 2009. In CACGEC I, the SNI chose not to waive its sovereign immunity and intervene in the action, even for the limited purpose of seeking dismissal under Rule 19 of the Federal Rules of Civil Procedure. Instead, it pursued only *amicus curiae* status. Likewise, in CACGEC II, the SNI again sought only *amicus* status with regard to briefing precisely the same issues on which it now seeks to intervene. Both prior cases were appealed, and the SNI made a calculated decision to forego the opportunity to participate as a party in the underlying cases and on appeal. Thus, the purported prejudice it will suffer—its inability to fully participate "in briefing and oral argument and . . . to seek stays of and to appeal any adverse decisions"—appears to be nothing more than an attempt to circumvent the consequences of a strategy it no longer wishes to be bound by.

Were the Court to view the instant lawsuit in isolation, the SNI's motion would be

considered timely. However, the history of this serial litigation presents an "unusual circumstance" that militates against a finding of timeliness.[9] *See*, Jicarilla Apache Trive v. Hodel, 821 F.2d 537, 539 (10th Cir. 1987) (affirming district court's denial of motion as untimely where applicant had notice of litigation affecting its interests over three and one-half years prior to seeking intervention).

### 2. *Claims or Defenses Sharing Common Question of Law or Fact*

The SNI contends that, as intervenor, it seeks to defend the validity of the rules, statutes,[10] and governmental actions Plaintiffs challenge in their three claims for relief. And because the SNI limits its waiver of sovereign immunity to the claims raised in the Complaint, it urges that its participation will not interject new issues or delay this action.

Plaintiffs argue that the SNI does not possess the requisite "claim or defense" that would permit it to intervene. In their Complaint, Plaintiffs first claim that Defendants acted arbitrarily, capriciously, and not otherwise in accordance with law when they determined that the Buffalo Parcel is Indian land. They also allege that IGRA regulations published in May 2008, on which Defendants predicated the determinations challenged in the second and third claims, violate the APA and are invalid. The SNI makes no similar claims; it seeks only to defend the validity of Defendants' actions. So the question is whether any of its defenses share a common question of law or fact with the main action.

Plaintiffs contend that, because only the Government can be subject to claims that it failed to act in conformance with the IGRA and other federal requirements, "[i]t follows that only the governmental agencies and officials who are responsible for complying with

---

[9] Prejudice to the existing parties, a factor for purposes of both timeliness and the overall permissive intervention determination, is discussed separately below.

[10] Because Plaintiffs have withdrawn their claim that the SNSA is unconstitutional in part, this action no longer challenges the validity of any statute.

the federal requirements can be appropriate defendants to such an action." (Docket No. 14 at 13.)

Plaintiffs cite to several cases in support of this proposition, which is essentially a standing argument. However, with the exception of a single case, the decisions or portions thereof from which the purportedly supporting language is drawn, relate to motions to intervene as of right under Rule 24(a). Because an entirely different standard applies to Rule 24(b) motions, such references simply are not relevant to permissive intervention. Moreover, the Court finds the limited analysis in the single citation that is applicable, Habitat Educ. Center, Inc. v. Bosworth, to be unpersuasive. 221 F.R.D. 488, 496-97 (E.D. Wis. 2004).

In Bosworth, the district court first confirmed that Article III standing is not required of applicants for permissive intervention. However, the court went on to conclude that the putative defendant-intervenor could not have a defense in common with the government because there was no statutory basis for extending the plaintiff's claims to run against the intervenor, as well. In other words, to meet the common defense requirement, defendant-intervenors are limited to those persons or entities who can themselves be sued on the underlying claims. The Bosworth court offered no explanation for determining that standing is not required, and then concluding that an applicant without standing cannot meet the requisite common claims or defenses factor.

This Court finds a case offered by the SNI[11] and reaching the opposite conclusion

---

[11] While the SNI objects to Plaintiffs' citation to Rule 24(a) cases in opposition to its Rule 24(b) motion, the majority of cases it offers in reply also involve Rule 24(a) motions. Because Rule 24(a) involves a different showing and analysis than is at issue here, the SNI's citations are equally unhelpful. The SNI also cites to several cases in which a tribe had been granted intervenor status in an earlier decision. The Court has been unable to locate the underlying decisions granting intervention and thus has no way to know whether the tribes moved under Rule 24(a) or 24(b), the particular circumstances that existed, or the factors the courts found persuasive. To the extent any information can be gleaned from the decisions, there is nothing to suggest similarity between the cited cases and this one. *See, e.g.*, State of Oregon v. Norton, 271 F. Supp. 2d 1270 (D. Or. 2003) (tribe intervened in challenge to Secretarial

to be persuasive. In <u>Kootenai Tribe of Idaho v. Veneman</u>, the Ninth Circuit analyzed permissive intervention under Rule 24(b) and concluded that the defense in common requirement was met where the intervenors' defenses were directly responsive to the claims asserted by the plaintiffs. 313 F.3d 1094, 1110-1111 (9th Cir. 2002) (affirming grant of permissive intervention to environmental groups wishing to defend validity of government's rulemaking where groups had no direct interest in government rulemaking procedures, but did assert interest in use and enjoyment of lands impacted by the challenged rule, and where government declined to fully defend its own actions).

This Court finds an analysis that focuses on the nature of the defense, rather than the status of the intervenor, to be in keeping with a plain reading of Rule 24(b). Here, the SNI's proposed Answer sets forth defenses common to those asserted by Defendants in their Motion to Dismiss and directly responsive to Plaintiffs' claims. Accordingly, the Court finds this requirement for intervention is met.

### 3.     *Prejudice to the Existing Parties*

In determining whether permissive intervention should be granted, district courts must consider whether intervention will cause undue delay or prejudice. Fed. R. Civ. P. 24(b)(3). The Second Circuit has referred to this as the "principal consideration," once the requirements of 24(b)(2) are met. <u>United States Postal Serv. v. Brennan</u>, 579 F.2d 188, 191 (1978).

The SNI urges that there will be no undue delay or prejudice because it promptly filed its motion, and its intervention will be limited to asserting defenses to Plaintiffs' three claims for relief. Thus, it contends, its party status will not expand, complicate or otherwise prolong the action.

---

determination that followed from prior suit instituted by the tribe). The Court declines to draw any conclusions from citations devoid of analysis on the issue for which they are offered.

Plaintiffs contend that they will be prejudiced by the SNI's intervention because the SNI seeks the benefits of party participation while shielding itself from the consequences of an adverse determination. They point to the SNI's Resolution, which is the source of its waiver of sovereign immunity here and expressly limits the waiver "to the adjudication of the three claims raised in the Complaint filed March 32, 2009 (Docket Number 1) in CACGEC III." (Docket No. 10-4.) According to Plaintiffs, the effect of this language and a series of express disclaimers that follows,[12] would allow the SNI to assert its defenses without submitting itself to the Court's jurisdiction on the very issues on which it seeks to intervene. Specifically, Plaintiffs urge that, should they receive a favorable determination, the SNI's limited waiver would preclude Plaintiffs from seeking relief for any failure by the SNI to abide by the Court's determinations.[13]

In reply, the SNI characterizes this argument as a "classic straw man" and cites to several cases standing for the proposition that when a party intervenes, it has full party status, renders itself vulnerable to complete adjudication by the federal court of the issues in litigation between the intervenor and the adverse party, and assumes the risk that the plaintiff will be able to obtain relief against it. *See, e.g.,* Schneider v. Dumbarton Developers, Inc., 767 F.2d 1007, 1017 (D.C. Cir. 1985); *see also,* County Sec. Agency v. Ohio DOC, 296 F.3d 477, 483 (6th Cir. 2002) (a motion to intervene is fundamentally incompatible with an objection to jurisdiction). Yet after citing cases standing for these well-established propositions, the SNI turns its argument upside-down and contends that these rules are not true with respect to entities that have sovereign immunity as they may

---

[12] One such disclaimer provides that the SNI's waiver "does not extend to any amendment or supplement to the Complaint, or to any cross-claim, counterclaim, third-party claim, or claim of any other nature that may be filed by any present or future party in CACGEC III." (Docket No. 10-4 at 4.)

[13] After CACGEC II was decided, the Defendants did not bring an end to gambling on the Buffalo Parcel and Plaintiffs moved for enforcement of the Court's judgment and for contempt. The Court presumes this is the kind of relief Plaintiffs allude to.

intervene for a limited purpose only. (Docket No. 18 at 9, fn.3 (citing <u>Lac Du Flabeau Band</u> <u>v. Norton</u>, 327 F. Supp. 2d 995, 1000 (W.D. Wis. (2004) (tribe that was indispensable party did not waive its sovereign immunity to underlying litigation by intervening for sole purpose of pursuing Rule 19 dismissal)). The SNI goes on to state it has the prerogative not to expose itself to additional claims of an amorphous and unpredictable nature. In short, it appears to confirm that its Resolution and limited waiver will permit the SNI to argue defenses, which Plaintiffs will be required to respond to, while remaining insulated from potential post-judgment relief.

As this Court recognized in <u>CACGEC I</u>, tribes certainly may limit their waiver of sovereign immunity.[14] But the question to be addressed here is whether the waiver, as presented, prejudices Plaintiffs. The Court concludes that it does.

The SNI does not contend that Plaintiffs have misread the scope of its intended limitations. Such a waiver places the Plaintiffs in the position of litigating against the SNI, but divests them of post-judgment remedies with regard to the very matters the SNI seeks to litigate. It would allow the SNI to be heard as a full party, yet raise the shield of immunity to certain consequences of an adverse determination. Beyond that, it would permit the SNI to obtain party status with regard to an appeal of the Court's decision, even though it heretofore has been unwilling to waive immunity for that privilege. This, too, holds the potential for further delay and complexity. The appeals in <u>CACGEC I</u> and <u>CACGEC II</u>, to which the SNI is not a party, are stayed pending the outcome of this litigation. The SNI's participation in this case, which in all likelihood will also be appealed, has the potential to

---

[14] In <u>CACGEC I</u>, the SNI sought to move, via an *amicus curiae* brief, for Rule 19 dismissal of the case on the grounds that it was a necessary party. The SNI argued that it did not want to intervene to bring its motion because, by doing so, it would risk waiving its sovereign immunity. The Court noted that the SNI could intervene for the sole purpose of seeking Rule 19 dismissal, as other tribes have done, without waiving immunity to the substantive claims. 471 F. Supp. 2d at 312 (citations omitted).

impact and complicate issues of consolidation on appeal, and further proceedings here, should one or more of the three cases be remanded.

Thus, the Court finds the potential for delay and prejudice does exist, and this factor does not weigh in favor of intervention.[15]

### 4. *The SNI's Interests*

The SNI contends that in challenging the constitutionality of the SNSA and seeking to permanently enjoin gambling on the Buffalo Parcel, Plaintiffs are taking direct aim at the SNI's core sovereign and economic interests. It urges that defense of its territorial sovereignty[16] and pursuit of economic development on the Buffalo Parcel are interests "sufficient to support a legal claim or defense which is founded upon [that] interest." (Docket No. 10-3 at 6 (quoting Diamond v. Charles, 476 U.S. 54, 77, 106 S. Ct. 1697, 90 L. Ed. 2d 48 (1986) (O'Connor, J., concurring) (citation and internal quotation marks omitted).) Plaintiffs do not contend otherwise.

In CACGEC I, this Court considered whether the SNI was a necessary party for purposes of Rule 19, and concluded that "the SNI certainly has an interest in its ability to use property that it owns in the City of Buffalo in the manner it wishes." 471 F. Supp. 2d at 326-27. The same legal issues and same interests are present here, and weigh in favor of intervention under Rule 24(b).

---

[15] The Court has reviewed all cases on which the SNI relies for its waiver argument. (Docket Nos. 10-3 at 2 and 18 at 9 fn.3.) Those not discussed above are not relevant to the permissive intervention determination. The cited cases involved tribes that initiated suit. The sovereign immunity discussions addressed whether, by commencing an action, the tribe waived immunity from counterclaims or related suits. Those discussions are not relevant here. However, one court did expressly note that by commencing an action, a tribe necessarily accepts the risk that it will be bound by an adverse determination. McClendon v. United States, 885 F.2d 627, 630 (9th Cir. 1989). Plaintiffs concern here is that the SNI has crafted its waiver and disclaimers so as to retain immunity from the consequences of an adverse determination it otherwise would necessarily accept by intervening.

[16] Although Plaintiffs have withdrawn their challenge to the SNSA's constitutionality, they still claim that land acquired under the SNSA and held in "restricted fee" is not "Indian country." Although the Court determined otherwise in CACGEC II, a potential challenge to sovereignty over the Buffalo Parcel remains.

### 5. *Party Representation of the SNI's Interests*

Where a movant has a sufficient interest in the litigation, "the degree to which [the putative intervenor's] interests are adequately represented by other parties" is an additional relevant factor in the permissive intervention determination. <u>Lovely H.</u>, 2006 U.S. Dist. LEXIS 83424, at *8.

The SNI acknowledges this Court's conclusion, in <u>CACGEC I</u>, that its interests in that action were adequately represented by the United States. The Court arrived at that determination in adjudicating the SNI's status as a necessary party under Rule 19. The SNI urges, and this Court agrees, that the prior conclusion does not preclude the Court from granting a motion for permissive intervention here.

Next, the SNI notes that, in contrast to a motion to intervene as of right under Rule 24(a), adequacy of representation is not a dispositive factor in the Rule 24(b) analysis. Again, this Court agrees. The instant factor is one of several "relevant factors" to be weighed. Alone, it is not dispositive. *See* <u>Arizona v. California</u>, 460 U.S. 605, 615, 627, 103 S. Ct. 1382, 75 L. Ed. 2d 318 (1983) (tribes whose interests were found to be adequately represented by government were permitted to intervene in lawsuit seeking additional water rights).

The SNI is tellingly silent, however, on the actual question of whether Defendants adequately represent its interests here. The Court finds it quite clear that the SNI's interests in the validity of the NIGC's conclusions that the Buffalo Parcel is sovereign SNI territory on which the SNI can conduct gambling, are substantially similar, if not identical, to the Government's interests in defending its regulations and determinations. In short, the SNI and Defendants have the same objective; to uphold the NIGC Chairman's determination.

The SNI does not contend that Defendants will not advance all appropriate legal arguments in support of their actions, and has not otherwise identified any aspect of its claimed interests that will not be adequately represented. Indeed, the Court has the benefit of having observed Defendants staunch representation of the SNI's interests in CACGEC I and CACGEC II, the same interests identified here.[17]

Accordingly, despite the SNI's suggestion to the contrary, this non-dispositive, "relevant factor" does not weigh in favor of intervention. Bosworth, 221 F.R.D. at 496-97 (holding that, even assuming defense in common existed, intervention was not warranted because applicants had participated in prior administrative proceedings where they made their views known and government was likely to provide adequate representation); *see also*, Kootenai Tribe, 313 F.3d at 1111 (intervenors seeking to defend governmental action would contribute to equitable resolution of case where the government declined to defend its actions, and intervenors' related interests, fully from the outset).

### 6. *The SNI's Contribution to Full Development of the Issues*

The SNI "believes that it can significantly contribute to full development of the factual issues in this suit," noting that in CACGEC II, it extensively briefed the history of its restricted fee land holdings and the substantial body of law regarding restricted fee lands and "Indian country." (Docket No. 10-3 at 14.)

Plaintiffs have not spoken to this factor. Nevertheless, the Court disagrees with the SNI's suggestion that it weighs in favor of intervention. As the SNI noted in response to an argument Plaintiffs raised relative to discovery, this is an administrative record case.

---

[17] Moreover, on the one point of statutory interpretation where Defendants and the SNI previously disagreed, Defendants have now changed direction, and espouse an interpretation consistent with that previously asserted by the SNI.

The claims here involve precisely the same questions[18] presented in <u>CACGEC II</u>, and to the extent the history of Indian land policy and related statutes proves to be relevant here, that background was fully developed in <u>CACGEC II</u>. Because there are no factual issues to develop here, the SNI's suggestion that this factor weighs in favor of intervention is rejected.

\* \* \* \*

In summary, the Court finds that intervention is not warranted here because the SNI's motion is untimely. Even were all requisite factors present, the remaining relevant factors do not weigh in favor of intervention. There is the potential for delay and prejudice, the SNI does not contend that its interests will not be adequately represented by Defendants, and its participation will not significantly contribute to full development of factual issues.

The Court notes that the SNI sought and was granted *amicus curiae* status in <u>CACGEC I</u> and <u>CACGEC II</u>. To the extent it wishes to submit *amicus* briefing in this case, it may do so without further motion or order from the Court.

## IV. CONCLUSION

For all of the reasons stated above, Defendants' Motion to Dismiss Plaintiffs' first claim for relief is granted in part, and denied in part. Specifically, subparts "A" and "B" of the first claim for relief (Docket No. 1 ¶¶ 94-102) are dismissed. Defendants' motion is denied as to subpart "C" of Plaintiff's first claim. The SNI's motion to intervene is denied, but the SNI may participate in this action as *amicus curiae*.

---

[18] Plaintiffs have withdrawn what would have been additional questions relative to the constitutionality of the SNSA and validity of the Compact.

## V.  ORDERS

IT HEREBY IS ORDERED that Defendants' Motion to Dismiss (Docket No. 11) is

GRANTED IN PART and DENIED IN PART.

FURTHER that the Seneca Nation of Indians' Motion to Intervene (Docket No. 10)

is DENIED.

FURTHER that the Seneca Nation of Indians may file briefs *amicus curiae* in this

action without further order of the Court.


SO ORDERED

Dated:          March 30, 2010
                Buffalo, New York

                                           /s/William M. Skretny
                                         WILLIAM M. SKRETNY
                                              Chief Judge
                                       United States District Court