UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

═══════════════════════════════════════

CITIZENS AGAINST CASINO GAMBLING IN ERIE
COUNTY (Joel Rose and Robert Heffern, as
Co-Chairpersons), REV. G. STANFORD BRATTON,
D. MIN., EXECUTIVE DIRECTOR OF THE NETWORK
OF RELIGIOUS COMMUNITIES, NETWORK OF RELIGIOUS
COMMUNITIES, NATIONAL COALITION AGAINST
GAMBLING EXPANSION, PRESERVATION COALITION
OF ERIE COUNTY, INC.,  COALITION AGAINST GAMBLING
 IN NEW YORK— ACTION, INC., THE CAMPAIGN FOR
BUFFALO—HISTORY ARCHITECTURE AND CULTURE,
ASSEMBLYMAN SAM HOYT, MARIA WHYTE, Erie
County Legislator, JOHN MCKENDRY, SHELLEY
MCKENDRY, DOMINIC J. CARBONE, GEOFFREY D.
BUTLER, ELIZABETH F. BARRETT, JULIE CLEARY,
ERIN C. DAVISON, ALICE E. PATTON, MAUREEN
C. SCHAEFFER, DORA RICHARDSON, and
JOSEPHINE RUSH,

                        Plaintiffs,

v.                                                  **DECISION AND ORDER**
                                                    09-CV-0291S

TRACIE STEVENS,[1] in her Official Capacity as Chairwoman
of the National Indian Gaming Commission, the
NATIONAL INDIAN GAMING COMMISSION, the
UNITED STATES DEPARTMENT OF THE INTERIOR,
KEN SALAZAR, in his Official Capacity as
the Secretary of the Interior, and BARACK OBAMA, in his
Official Capacity as President of the United States

                        Defendants.

═══════════════════════════════════════

─────────────────────

        [1] Pursuant to Fed. R. Civ. P. 25(d), Tracie Stevens is substituted for Philip N. Hogen as the
National Indian Gaming Commission's Chairperson.

## I.  INTRODUCTION

On March 31, 2009, Plaintiffs commenced this action challenging the legality of a gambling casino operated by the Seneca Nation of Indians ("SNI") in the City of Buffalo on land it acquired in 2005 (the "Buffalo Parcel").

Currently before the Court is Plaintiffs' Motion for an Order Compelling Production of Administrative Record Documents and Authorizing Discovery to Supplement the Administrative Record.  (Docket No. 37.)  The motion is fully briefed, and the Court has determined that oral argument is not necessary.  For the reasons discussed below, Plaintiffs' Motion is granted in part and denied in part.

## II.  BACKGROUND

The facts and legal principles underlying this action have been thoroughly discussed in this and the prior cases, and only facts pertinent to this discovery dispute are set forth below.

This is the third lawsuit commenced by largely the same plaintiffs, who seek to bar the SNI from operating a gambling facility in Buffalo, New York.  The Complaint sets forth three claims for relief.  Only two give rise to this discovery dispute, and both allege violations of the Administrative Procedure Act ("APA").

In their second and third claims for relief, Plaintiffs allege that the Indian Gaming Regulatory Act's ("IGRA's") prohibition against gambling on "after-acquired" lands applies to the Buffalo Parcel, and renders the SNI's ongoing gambling operation there unlawful. Specifically, they contend that new regulations promulgated by the Secretary of the Interior in May 2008 regarding the scope of the "after-acquired" land prohibition and the "settlement of a land claim" exception to that prohibition are illegal, arbitrary, and capricious because the DOI did not adhere to the APA's publication requirements and because the regulations

contradict the clear intent of Congress.  In both claims, Plaintiffs go on to assert that the National Indian Gaming Commission's ("NIGC")  approval of Class III gambling on the Buffalo Parcel, based on the new regulations, also is illegal.  They seek an order declaring the challenged portions of the regulations and the NIGC's January 20, 2009 ordinance approval invalid.

On May 11, 2010, the NIGC filed its administrative record containing the documents then-Chairman Hogen relied on in approving the SNI's second amended gaming ordinance.  (Docket Nos. 24, 25.)  The DOI filed its administrative record on August 27, 2010, which includes documents underlying a DOI M-Opinion (M-37023) and a letter, both issued by Solicitor David L. Bernhardt on January 18, 2009.  (Docket Nos. 31, 32.)  The M-Opinion and letter were issued after the NIGC, on November 14, 2008, requested a description of the policy reasons for the DOI's changed interpretation of the IGRA's after-acquired land prohibition.  (Docket No. 31-2 at 34.)

By letter dated October 7, 2010, Plaintiffs' counsel asked Defendants' counsel to provide documents they believe were improperly omitted from the administrative record or should otherwise be disclosed.  (Docket No. 37-16.)  These included: (1) the administrative record for the DOI's revised regulations, issued on May 20, 2008, insofar as it relates to the applicability of IGRA's prohibition against gambling on after-acquired land to trust land and not restricted fee land; (2) documents Plaintiffs contend are not within the deliberative process privilege; specifically, documents post-dating May 20, 2008 (the date the new regulations were published) that were redacted or withheld and communications between the agencies (DOI and NIGC) and SNI representatives; and (3) documents relating to Edith Blackwell's role in developing the policy statement the NIGC had requested.  This latter request was based on documents in the DOI's administrative record showing that

3

Blackwell, who serves as Associate Solicitor for the Division of Indian Affairs and who had been recused from matters involving SNI gaming (Docket No. 31-2 at 113), had participated in preparing the Solicitor's M-Opinion.

In response, Defendants filed documents responsive to Plaintiffs' first request, and stated that all communications from the agencies to the SNI had been disclosed. But, Defendants objected to the remaining requests on the grounds that all assertions of deliberative process privilege were proper, and that Edith Blackwell's participation in the development of Solicitor Opinion M-37023 was appropriate. (Docket No. 37-17.)

Eight months after Defendants responded to Plaintiffs' requests (*id.*), and more than six months after Defendants filed their supplemental administrative record (Docket No. 33), Plaintiffs brought the instant discovery motion. As this Court noted in its prior decision, Plaintiffs' challenge to the legality of government rule-making and decision-making is an administrative record case. (Docket No. 21 at 28.) But Plaintiffs contend that disclosure beyond what Defendants have provided is warranted here because: (1) the government has asserted unfounded claims of privilege and redacted highly relevant information, and (2) Edith Blackwell's serious conflict of interest infected the integrity of the administrative process. The motion is now fully briefed and ready for disposition.

## III. DISCUSSION

### A.  The Relevant Legal Principles

#### 1.  *APA Review of Agency Action*

The APA provides that a reviewing court must "set aside agency action" that is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(a). Here, Plaintiffs challenge the DOI's regulations on all fronts, claiming that the agency's actions were arbitrary and capricious and that the resulting regulations

are contrary to Congress's intent.

>Courts may deem an agency decision arbitrary and capricious if:
>
>the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983).  Proof of subjective bad faith by agency decision-makers, depriving a plaintiff of fair and honest consideration of the matter, also generally constitutes arbitrary and capricious action.  Tummino v. Torti, 603 F. Supp. 2d 519, 542 (E.D.N.Y. 2009) (citations omitted).

Where the agency decision at issue involves the interpretation of a federal statute the agency administers, the court's review is guided by the principles announced in Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc., 467 U.S. 837, 842-43, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).  Chevron confirmed that "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent."  Id. at 843 n.9.

### 2. *The Record on Review*

"Generally, a court reviewing an agency decision is confined to the administrative record compiled by that agency when it made the decision."  Nat'l Audubon Soc'y v. Hoffman, 132 F.3d 7, 14 (2d Cir. 1997) (citing Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743-44, 105 S. Ct. 1598, 84 L. Ed. 2d 643 (1985)).  The rationale for this "record rule" is that, when considering a determination or rule that an administrative agency is authorized by law to make, the reviewing court should review only the materials that were before the agency when it made its decision, and should not substitute its opinion for that

of the agency.  SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L. Ed. 1995

(1947).

The "record rule" is not absolute, however, and there are limited circumstances

where a reviewing court may consider extra-record materials.  Nat'l Audobon, 132 F.3d at

14.  As relates to the instant motion, "a strong showing of bad faith or improper behavior"

may justify supplementation.  Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402,

420, 91 S. Ct. 814, 28 L. Ed. 2d 136 (1971); Tummino v. Von Eschenbach, 427 F. Supp.

2d 212, 230 (E.D.N.Y. 2006).  To warrant extra-record discovery in an APA case, the

plaintiff must make a sufficiently strong factual showing of impropriety; naked assertions

of bad faith will not suffice.  New York v. Salazar, 701 F. Supp. 2d 224, 240-41 (N.D.N.Y.

2010).

### 3.    *Deliberative Process Privilege*

The deliberative process privilege:

> shields from disclosure intra-agency or inter-agency documents reflecting
> advisory opinions, recommendations and deliberations comprising part of a
> process by which governmental decisions are formulated.  Restated, the
> privilege protects recommendations, draft documents, proposals,
> suggestions, and other subjective documents which reflect the personal
> opinions of the writer rather than the policy of the agency.  The privilege rests
> on the obvious realization that officials will not communicate candidly among
> themselves if each remark is a potential item of discovery and front page
> news, and its object is to enhance the quality of agency decisions by
> protecting open and frank discussions among those who make them within
> the Government. [ ]  For a particular inter-agency or intra-agency document
> to be protected by the privilege, the agency must demonstrate that the
> document is both "predecisional" and "deliberative."

Alloco Recycling, Ltd. v. Doherty, 220 F.R.D. 407, 411 (2004) (internal quotation marks and

citations omitted) (alteration added).  The burden of establishing that a document falls

within the parameters of the privilege rests with the government.  Conte v. County of

Nassau, CV 06-47462009 U.S. Dist. LEXIS 41348, at *13 (E.D.N.Y. May 15, 2009)

(citations omitted).

**B.    Analysis**

Plaintiffs urge that additional disclosure is warranted for several reasons.  First, they argue that the deliberative process privilege is not applicable to all or most of the documents redacted or withheld on that basis because: (1) the integrity of the decision-making process itself is the subject of this litigation, which renders predecisional material discoverable; (2) in any event, most of the information Defendants have withheld is postdecisional, not predecisional; and (3) on balance, the Plaintiffs' and the public's interests in seeking disclosure outweigh the government's interests in nondisclosure.  Next, Plaintiffs contend that they have offered sufficient evidence of bad faith and improper behavior to support their request for extra-record discovery.

**1.    *The Subject of this Litigation***

In support of their first deliberative process privilege argument, Plaintiffs liken their complaint to that in New York v. Salazar, 701 F. Supp. 2d 224.  In Salazar, the plaintiffs brought claims under the APA alleging that the deliberative process by which a DOI Record of Decision was issued was fatally flawed and infected by bias, bad faith, and improper motives.  *Id.* at 237-38.  Among other things, the plaintiffs alleged that a highly-placed DOI official withdrew decision-making authority from the responsible regional office and became personally involved in the process, a former DOI employee, now a lobbyist, had direct access to the DOI official and the ability to influence his decision, and the DOI unreasonably delayed in responding to the plaintiffs' FOIA requests and violated their constitutional right to due process.  *Id.* at 241.  On these facts, which apparently found some support in the record, the district court held that certain of the plaintiffs' causes of action were directed at the integrity of the decision-making process itself such that the

7

deliberative process privilege could not be used to restrict access to predecisional materials. *Id*. at 237-38, 241.

As previously noted, Plaintiffs second and third causes of action in this case allege that the DOI did not adhere to the APA's publication requirements and that the challenged regulations contradict the clear intent of Congress. 121-23, 129, 131-32. Defendants have not disputed that such conduct, if true, may violate the APA.  But, the first allegation involves a purported procedural deficiency the resolution of which does not require any consideration of motivation or of the administrative record at all; rather, it is a question readily answered by review of the relevant statutory requirements and publicly available documents.  The second requires the Court to consider the intent of Congress, not that of the Defendants.  Quite simply, on the face of Plaintiff's claims, there is no inference of bias or bad faith that would require further review and consideration.

In an attempt to position themselves within the orbit of <u>Salazar</u>, Plaintiffs point to paragraphs 11-12 and 90-92 of their Complaint.  Paragraph 11 alleges that the challenged regulations were adopted in an "attempt to accommodate the SNI[ ]."  Paragraph 12 characterizes two government actions as "last-minute" and "illegal"—the DOI Solicitor's issuance of an M-Opinion on January 18, 2009, and the NIGC's approval of the SNI's gaming ordinance on January 20, 2009.  In paragraph 90, Plaintiffs allege that the M-Opinion contradicts Defendants' prior position on the issue of restricted fee lands.  They go on to state, upon information and belief, that at some time between January 25, 2008 and May 20, 2008, individuals acting on behalf of the SNI "lobbied" DOI and NIGC officials to change their position.  (¶ 91.)  Paragraph 92 simply notes that, in approving the SNI's gaming ordinance, the NIGC Chairman cited the DOI Solicitor's opinion(s).  On these allegations, Plaintiffs now claim they are squarely challenging the deliberative process as

fatally flawed, and infected by the appearance of improper influence.

Conclusory allegations of "lobbying" (made upon information and belief) and "accommodation" are a far cry from the specific fact allegations and claims of constitutional violations that so troubled the district court in Salazar. Moreover, unlike Salazar, the record here does not contain any suggestion of the improper "lobbying" that is alleged to have prompted the DOI to change its position as a means of "accommodating" the SNI. Thus, I find Plaintiffs' Complaint is readily distinguished, and I am not persuaded that the deliberative process privilege "evaporates" based on the allegations and claims presented here.

### 2.   *The Requirement that Documents be "Predecisional"*

Plaintiffs next urge that all documents relating to the Solicitor's Opinion M-3703 and the DOI's letter to the NIGC, both issued on January 18, 2009, are subject to disclosure because their purpose was simply to explain the DOI's already completed interpretive rulemaking. As such, they claim, the documents are not predecisional.

A document is "predecisional" when it is "'prepared in order to assist an agency decisionmaker in arriving at his decision.'" Hopkins v. United States Dep't of Hous. & Urban Dev., 929 F.2d 81, 84 (2d Cir. 1991) (quoting Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184, 95 S. Ct. 1491, 44 L. Ed. 2d 57(1975)). This element distinguishes documents prepared before the adoption of an agency policy or issuance of a final agency decision, which are protected, from "postdecisional memoranda setting forth the reasons for an agency decision already made," which are not. Grumman Aircraft Eng'g Corp., 421 U.S. at 184.

Some additional background and a review of the record is instructive here. On May 20, 2008, the DOI published regulations, with an effective date of August 25, 2008,

"implementing section 2719 of the Indian Gaming Regulatory Act (IGRA)."  73 Fed. Reg. 29354 (May 20, 2008).  Among other things, the regulations define "newly acquired lands" as lands taken by the Secretary into trust after October 17, 1988.  This definition is a departure from the DOI's prior position that "newly acquired lands" also include restricted fee lands.  The SNI holds its Buffalo Parcel in restricted fee.

In a letter dated November 14, 2008, Penny Coleman, NIGC's Acting General Counsel, advised the DOI that the SNI had submitted a site specific Class III gaming ordinance to the NICG which "the Nation asks the Chairman to review . . . in light of the [DOI's] new interpretation of 25 U.S.C. § 2719 as it applies to restricted fee land."  (Docket No. 31-2 at 34.)  Coleman went on to state:

> We understand that DOI believes the new interpretation [of section 2719] complies with the plain meaning of the statute and agree with that position. However, if the Chairman is to approve the Nation's gaming ordinance on the grounds that section 2719 does not apply to restricted fee land, he must provide a reasoned analysis for this new interpretation.  A description of DOI's policy reasons for the change will assist the Chairman in providing that analysis.

*Id*.  In short, the NIGC asked the DOI for a "postdecisional memorand[um] setting forth the reasons for [its] agency decision already made."  Grumman Aircraft Eng'g Corp., 421 U.S. at 184.  The M-Opinion and letter were issued on January 18, 2009.  (Docket No. 31-2 at 24-30.)

In the M-Opinion, Solicitor David Longly Bernhardt acknowledged that the new regulations were a departure from the DOI's prior position with respect to restricted fee lands, and went on to discuss the reasons for that change of position.  Although such a document would appear to fall squarely within Grumman Aircraft's definition of an unprotected postdecisional memorandum, Defendants urge that the documents underlying the M-Opinion are protected for a variety of reasons.

First, they claim that courts have routinely found that the deliberative process privilege may cover documents that explain or discuss prior agency decisions.  I disagree. In the cases Defendants rely on, the documents at issue did not explain decisions already made by the agencies; rather, their <u>sole</u> purpose was to present information specific to a future agency decision.  *See* <u>Mapother v. Dep't of Justice</u>, 3 F.3d 1533 (D.C. Cir. 1993) (protecting research and compilation of material prepared in order to provide the Attorney General with information necessary to particular decision); <u>Formaldehyde Inst. v. Dep't of Health & Human Svcs.</u>, 889 F.2d 1118 (D.C. Cir. 1989) (protecting comments made by outside entity following its review of a report, which review was central to the agency's deliberative decision about whether to publish that same report).

In the M-Opinion at issue here, the DOI is simply "discuss[ing] the reasons for [its] change of position."  (Docket No. 31-2 at 24.)  In addition, Defendants have taken the position that the "Solicitor Opinion M-37023 [ ] is not specific to the Seneca Nation of Indians or this litigation."  (Docket Nos.  37-17 at 3; 39 at 6.)  Indeed, Defendants offered to separate the administrative record into two groups of documents, those related to the Solicitor Opinion M-37023 (not specific to the SNI), and those related to the Response to NIGC's request regarding the Seneca Nation.  (Docket No. 37-17 at 3.)

Because the M-Opinion was prepared after the DOI's rulemaking was complete, and because, according to Defendants, the M-Opinion is not specific to the NIGC's decision on the SNI's gaming ordinance, I find the cited cases readily distinguished and unpersuasive.

Defendants next contend the M-Opinion is nevertheless decisional in nature because, in addition to explaining the reasons for the DOI's policy change, it discusses a question on which the DOI had not previously opined—specifically, the Non-Intercourse Act's application to off-reservation land.  (Docket No. 39 at 16.)  The language of the M-

Opinion cuts against this argument.

Upon review, it is clear that the DOI did not develop its Non-Intercourse Act "opinion" after the section 2719 regulations were published such that the M-Opinion can be considered decisional in nature. Rather, deliberations on the applicability of the Act took place prior to May 20, 2008, and the Act is discussed in the M-Opinion solely to the extent necessary to describe and explain the [DOI's] section 2719 policy change:

> In developing the Part 292 regulations, the [DOI] had an opportunity to reconsider the meaning of section 2719 and to examine more closely the law governing the creation of restricted fee lands. Based on its review, the [DOI] concluded that Secretary Norton's concern about the potential loophole for restricted fee lands was based on an incorrect understanding of the law.

(Docket No. 31-2 at 27.)

> [T]he [DOI] determined that Secretary Norton's concern about a significant loophole in section 2719 was based on a misapprehension of the law. Secretary Norton was assuming that off reservation lands acquired by tribes post-IGRA would automatically be subject to the restriction on alienation imposed by the Non-Intercourse Act. [T]he better view of the law is . . . .

(*Id*. at 29 (citing the government's litigating position on the Non-Intercourse Act dating back to 1997 and related Supreme Court decisions which also predate publication of the regulations).)

On a plain reading of the M-Opinion, the Non-Intercourse Act discussion is nothing more that a postdecisional reiteration of a position publicly taken by the government in the past and adopted in the DOI's interpretive regulations. Defendants, who bear the burden here, have conceded as much.

For the reasons stated, the Court finds that the Solicitor Opinion M-37023 was prepared after the DOI adopted its policies, as expressed in the Part 292 regulations, and is a document of general applicability that explains the reasons for decisions already made. As such, the underlying documents are not protected by the deliberative process privilege

and are subject to disclosure.  I note, however, that the DOI has asserted other privileges—*e.g.*, attorney-client, work product—with regard to  some of the documents redacted or withheld on the basis of the deliberative process privilege.  Plaintiffs do not contest the government's assertions of any other privilege.[2]  Therefore, these other privileges will continue to act as a bar to disclosure to the extent they are relevant.

In contrast to the M-Opinion, DOI's Response to NIGC's request specifically discusses the Buffalo Parcel and provides an analysis as to why the SNI's Buffalo acquisition would fall within section 2719's "settlement of a land claim" exception, as the relevant terms are defined in the new regulations. (Docket No. 31-2.)  Therefore, I must reject Plaintiffs' argument that the timing of this Response alone—*i.e.*, issued subsequent to the DOI rulemaking—is sufficient to render it postdecisional.  Although the NIGC merely sought a description of DOI's policy reasons that would assist the NIGC Chairman in drafting his analysis, what the DOI provided was its own analysis of the applicability of section 2719's exceptions to the very parcel of land that was the subject of NIGC's decisionmaking.   I cannot ignore the fact that, as was the case in <u>Mapother</u> and <u>Formaldehyde Inst.</u>, DOI's <u>sole</u> purpose in preparing this response was to provide information and analysis specific to a future NIGC decision.  As such, the Response is predecisional and deliberative and the underlying documents are protected.

### 3.    *Balancing of Interests*

Plaintiffs next argue that to the extent there are any documents remaining to which the deliberative process privilege applies, a balance of the interests weighs in favor of their disclosure.  The Court already has concluded that documents underlying the M-Opinion

---

[2]  The Court does not consider a two-sentence footnote that conclusorily questions the adequacy of Defendants' privilege log, and requesting that the attorney-client privilege be deemed waived as proper notice and argument.

are not protected under deliberative process privilege.  That leaves the NIGC's record, the documents related to the DOI Response to NIGC's request,  and the DOI's supplemental record, as possible subjects of this argument.

The parties agree that the deliberative process privilege is qualified and a court may still rule that privileged information must be released.  In balancing interests relative to disclosure, courts must consider: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." Mobil Oil Corp. b. Dep't of Energy, 520 F. Supp. 414, 417 (N.D.N.Y. 1981) (citing In re Franklin Nat'l Bank Sec. Litig., 478 F. Supp. 577, 583 (E.D.N.Y. 1979)).

Plaintiffs contend the public's interest in disclosure outweighs the government's interests here because Defendants' bias, partiality, audacity, and ethical breaches, and the NIGC's unreasonable actions, render Defendants' conduct central to this litigation.  For reasons already stated in Point III(B)(1), *supra*, Plaintiffs' conclusory allegations do not place the DOI and NIGC decisionmaking processes at issue in the case.  Even assuming otherwise, further disclosure is not warranted for the reasons discussed fully below.

### 4.    *The Alleged Bad Faith and Improper Behavior*

Plaintiffs seek both the disclosure of privileged record materials and extra-record discovery based on the DOI's purported bad faith and improper behavior.  As previously noted, an exception to the record rule may exist where "there has been a strong showing in support of a claim of bad faith or improper behavior on the part of agency decisionmakers." Nat'l Audobon Soc'y, 132 F.3d at 14.  A strong showing is necessary "[b]ecause accusations of improper political influence are easy to make [and] courts have

to be careful in determining just which of those accusations are substantial enough to merit further consideration and extra-record discovery." Sokaogon Chippewa Cmty. v. Babbitt, 961 F. Supp. 1276, 1280 (W.D. Wis. 1997). Based on the following facts, Plaintiffs first argue that Edith Blackwell improperly orchestrated the DOI's reversal of position on the applicability of section 2719 to restricted fee land. (Docket No. 37-1 at 7.)

At all relevant times, Blackwell had a personal relationship and was living with Michael Rossetti, a former DOI employee, now a partner with Akin Gump Strauss Hauer & Feld LLP. Defendants confirm that Blackwell and Rossetti are now married.

The Akin Gump firm provides legal representation to the SNI, and absent authorization by the DOI's Ethics Office, Blackwell is recused from all matters that involve Akin Gump. (Docket No. 39-1 at ¶2.) Blackwell has stated that she is recused from "Seneca Nation gaming matters" (Docket No. 31-2 at 114), and the DOI advised the NIGC that "Ms. Blackwell is recused from all matters involving the SNI" (*id.* at 119).

It is evident from the record that Blackwell was involved in discussions on the section 2719 regulations and that she assisted in drafting the subsequent M-Opinion. (Docket 31-3 at 8.) From this, Plaintiffs conclude that Blackwell "unrecused" herself in order to orchestrate the DOI's change of position on restricted fee lands for the benefit of the SNI and her lobbyist spouse, and that her involvement in both the rulemaking process and the M-Opinion warrant additional record disclosure and extra-record discovery.

In response, Defendants filed the declaration of George T. Skibine, DOI's Deputy Assistant Secretary for Management-Indian Affairs, who had primary responsibility for the at-issue rulemaking activities. (Docket No. 39-2 ¶¶1, 5.) Skibine states that the regulations implementing section 2719 are rules of general applicability used to make decisions about Indian lands across the nation. (*Id*. ¶4.) He further avers that, while Blackwell:

> was involved in developing the legal advice on the section [2719] regulations provided to [Skibine] by the Solicior's Office . . . she did <u>not</u> participate in one aspect of the rulemaking—the interpretation that section [2719] does not apply to restricted fee lands.  She informed me that she would not participate in that aspect of the rulemaking in order to avoid even the appearance of impropriety.  Whenever the issue of restricted fee lands arose during discussions of other aspects of the rulemaking, Ms. Blackwell would excuse herself from the room.

(*Id*. ¶6 (emphasis in original).)  In short, he attests that Blackwell remained recused from the sole aspect of the rulemaking that Plaintiffs have argued could work only to the benefit of the SNI, among all Indian tribes.  Plaintiffs point to one email in which Blackwell refers to her involvement in unspecified discussions on the 2719 regulations.  That general reference is not sufficient to call Skibine's more specific statements into question.  And Plaintiffs have not provided any facts indicating that Blackwell's participation in rulemaking of general applicability was improperly motivated, resulted in biased decisionmaking, or was specifically related to either Akin Gump or the SNI.  Thus, this case is readily distinguished from those on which Plaintiffs rely.  <u>Salazar</u>, 701 F. Supp. 2d at 241-242 (limited discovery warranted where plaintiff produced evidence showing that official had inappropriate contact with lobbyist who was a personal friend and former colleague, wrested the decisionmaking process from the responsible regional office, prejudged and controlled the result, and stonewalled plaintiffs' FOIA requests to curtail their participation in the process); <u>Schaghticoke Tribal Nation v. Norton</u>, No. 06CV81, 2007 WL 867987 (D. Conn. Mar. 19, 2007) (allowing plaintiffs to depose two DOI officials regarding improper political influence in reversal of prior agency decision where plaintiffs proffered evidence that officials who were central to decisionmaking process characterized meetings with congressional members as pressure from elected official, and emails in record raised questions about targeted lobbying at the agency level).

On the following facts, Plaintiffs next argue that Blackwell improperly participated

in the preparation of the M-Opinion.  Blackwell was first asked if she would be able to review the Solicitor's draft on December 12, 2008.  (Docket No. 31-3 at 8.)  Blackwell agreed that she could because she viewed the document as related to the broader issue of the 2719 decisionmaking, as opposed to SNI litigation specifically.  (*Id*.) She received a copy of the draft document that same day and returned an edited version to the Solicitor's office on December 15, 2008. (*Id*. at 16.)  On January 12, 2009, Blackwell contacted Melinda J. Loftin, DOI's Designated Agency Ethics Official, to discuss her "possible participation in drafting what became Solicitor's Opinion M-37023," the document Blackwell appears to have begun working on approximately one month prior.  (*Id*.; Docket No. 39-1 ¶3.)  Lofton attests that she determined Blackwell could participate in preparing the M-Opinion, but she does not set forth the information she considered or the basis for her decision.  (*Id*.)

Plaintiffs rightly call this sequence of events into question.  Nevertheless, I find these facts do not warrant extra-record discovery.  The Court already has accepted Plaintiffs' characterization of the M-Opinion as simply stating the reasons for decisions already made, and not prepared as part of any deliberative process.  As such, any irregularities with regard to Blackwell's participation in the M-Opinion, while arguably of concern, simply are not relevant to the claimed deficiencies in the DOI rulemaking process or the NIGC decisionmaking process.   And, of course, the Court has already determined that documents related to the postdecisional M-Opinion should be disclosed, subject to other stated privileges.  To the extent this additional record disclosure calls into question Blackwell's participation in any deliberative process, a further motion may be warranted.

## IV.  CONCLUSION

For the reasons stated above, Defendants shall provide all documents related to Solicitor Opinion M-37023 that were redacted or withheld on the basis of the deliberative process privilege, except as otherwise protected by another asserted privilege.  Plaintiffs' motion to compel is denied in all other respects.

## V.  ORDERS

IT HEREBY IS ORDERED that Plaintiffs' Motion for an Order Compelling Production of Administrative Record Documents and Authorizing Discovery to Supplement the Administrative Record (Docket No. 37) is GRANTED IN PART and DENIED IN PART.

FURTHER, that Defendants shall produce the documents identified in this Decision within ten days from the date of this Order.

SO ORDERED


Dated:       August 30, 2011
             Buffalo, New York




                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                             Chief Judge
                                        United States District Court