UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CITIZENS AGAINST CASINO GAMBLING IN ERIE
COUNTY (Joel Rose and Robert Heffern, as
Co-Chairpersons), REV. G. STANFORD BRATTON,
D. MIN., NETWORK OF RELIGIOUS COMMUNITIES,
NATIONAL COALITION AGAINST GAMBLING EXPANSION,
PRESERVATION COALITION OF ERIE COUNTY, INC.,
COALITION AGAINST GAMBLING IN NEW YORK—
ACTION, INC., THE CAMPAIGN FOR BUFFALO—
HISTORY ARCHITECTURE AND CULTURE,
ASSEMBLYMAN SAM HOYT, MARIA WHYTE, Erie
County Legislator, JOHN MCKENDRY, SHELLEY
MCKENDRY, DOMINIC J. CARBONE, GEOFFREY D.
BUTLER, ELIZABETH F. BARRETT, JULIE CLEARY,
ERIN C. DAVISON, ALICE E. PATTON, MAUREEN
C. SCHAEFFER, DORA RICHARDSON, and
JOSEPHINE RUSH,

                         Plaintiffs,

v.                                          **DECISION AND ORDER**
                                            09-CV-0291S

TRACIE STEVENS,[1] in her Official Capacity as Chairwoman
of the National Indian Gaming Commission, the
NATIONAL INDIAN GAMING COMMISSION, the
UNITED STATES DEPARTMENT OF THE INTERIOR,
KEN SALAZAR, in his Official Capacity as
the Secretary of the Interior, and BARACK OBAMA, in his
Official Capacity as President of the United States

                         Defendants.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Tracie Stevens is substituted for Philip N. Hogen as the National Indian Gaming Commission's Chairperson.

1

## I.  INTRODUCTION

On March 31, 2009, Plaintiffs commenced this action challenging the legality of a gambling casino operated by the Seneca Nation of Indians ("SNI") on land it acquired in 2005, in the City of Buffalo (the "Buffalo Parcel").

Currently before the Court is Plaintiffs' Motion for an Order to Enforce, to Expand the Administrative Record and for Discovery.  (Docket No. 45.)  The motion is fully briefed, and the Court has determined that oral argument is not necessary.  For the reasons discussed below, Plaintiffs' Motion is granted in part, and denied in part.

## II.  BACKGROUND

The facts and legal principles underlying this action have been thoroughly discussed in this and prior related cases.  Familiarity with the relevant cases and decisions is presumed, and this decision will set out only those facts pertinent to the pending motion.

This is the third lawsuit commenced by largely the same plaintiffs, who seek to bar the SNI from operating a gambling facility in Buffalo, New York.[2]  Each lawsuit has alleged that the SNI's gambling operation on the Buffalo Parcel is unlawful because the land is not "Indian lands," as that term is defined in the Indian Gaming Regulatory Act (the"IGRA"), and even if it were, the land was not acquired "as part of the settlement of a land claim," such that it would be excepted from the IGRA's general prohibition on gaming on lands acquired after October 17, 1988.  25 U.S.C. § 2719.

The instant Complaint sets forth three claims for relief.  Only two give rise to the pending discovery dispute, and both allege violations of the Administrative Procedure Act

---

[2] Citizens Against Casino Gambling in Erie County v. Kempthorne, 06-CV-00001, filed January 3, 2006 ("CACGEC I"); Citizens Against Casino Gambling in Erie County v. Hogen, 07-CV-00451, filed July 12, 2007 ("CACGEC II"); Citizens Against Casino Gambling in Erie County v. Hogen, 09-CV-00291, filed March 31, 2009 ("CACGEC III").

("APA").  In their second claim, Plaintiffs challenge new regulations promulgated by the Secretary of the Interior in May 2008 regarding the scope of IGRA's prohibition on gambling on "after-acquired" land.  Specifically, they contend the Secretary of the Interior acted arbitrarily and capriciously when he adopted substantive revisions to the proposed regulations without first republishing them for additional public comment.  Plaintiffs also charge that the final regulations are contrary to Congress's intent.  The third claim involves the IGRA's "settlement of a land claim" exception to the gaming prohibition.  Here again, Plaintiffs allege both that the Secretary failed to republish substantive revisions to the proposed regulations prior to their adoption, and that the regulations contradict the statute's clear meaning.  They seek an order declaring the DOI's regulations, and the NIGC's January 20, 2009 approval of the SNI's second amended gaming ordinance, based on those regulations, invalid.

On May 11, 2010, the NIGC filed its administrative record containing the documents then-Chairman Hogen relied on in approving the SNI's second amended gaming ordinance.  (Docket Nos. 24, 25.)  The DOI filed its administrative record on August 27, 2010.  The DOI record (Docket Nos. 31, 32) includes documents relating to an agency M-Opinion (M-37023) and a letter (Docket No. 31-2 at 24-33), both of which are signed by Solicitor David L. Bernhardt and dated January 18, 2009.  These documents were issued after the NIGC requested a description of the DOI's policy reasons for adopting, in the new regulations, an interpretation of the IGRA's after-acquired land prohibition that contradicts the agency's prior interpretation.  (Docket No. 31-2 at 34.)

Upon review of the administrative records, Plaintiffs believed certain documents had been improperly omitted.  They attempted to resolve their concerns directly with Defendants, who supplemented the record, on December 1, 2010, to include documents

relating to one of Plaintiffs' three areas of concern.  (Docket No. 33.)  On June 22, 2011, Plaintiffs moved to compel production and authorize discovery to supplement the record on the grounds that: (1) the government had asserted unfounded claims of privilege and redacted highly relevant information, and (2) Edith Blackwell, who served as Associate Solicitor for the Division of Indian Affairs, had a conflict of interest that infected the integrity of the rulemaking process.

The motion to compel was granted in part on August 30, 2011, and Defendants were directed to produce documents related to Solicitor Opinion M-37023 that had been redacted or withheld solely on the basis of the deliberative process privilege.  As for Blackwell's participation in the M-Opinion, this Court found no record evidence suggesting that she had been involved in that portion of section 2719 rulemaking that addressed the statute's applicability to restricted fee lands and, further, that Plaintiffs' fact allegations and claims do not place the integrity of the DOI and NIGC decisionmaking processes at issue.  Thus, Plaintiffs' request for additional discovery on this basis was denied.  The Court left open the possibility for a further motion, should the directed production reveal new relevant information.

The DOI filed its amended privilege log and additional documents on September 9, 2011.  Plaintiffs again believe the Government's disclosure is incomplete.  They first sought additional clarification and/or disclosure from Defendants.  When Defendants declined to provide the additional requested materials, Plaintiffs filed this second motion to compel on December 30, 2011.  In essence, they argue that Defendants have not provided all disclosure required by this Court's prior order, and that additional evidence regarding Blackwell's conduct warrants the disclosure of additional privileged materials and/or extra-record discovery.

## III.  DISCUSSION

### A.    The Relevant Legal Principles

"Generally, a court reviewing an agency decision is confined to the administrative record compiled by that agency when it made the decision."  Nat'l Audubon Soc'y v. Hoffman, 132 F.3d 7, 14 (2d Cir. 1997) (citing Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743-44, 105 S. Ct. 1598, 84 L. Ed. 2d 643 (1985)).  The rationale for this "record rule" is that, when considering a determination or rule that an administrative agency is authorized by law to make, the reviewing court should have before it nothing more than the materials that were before the agency when it made its decision, and should not substitute its opinion for that of the agency.  SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947).

It is important to note that, for purposes of judicial review, the "complete administrative record" may not contain all of the information that was before the agency. Privileged materials, such as documents that fall within the deliberative process privilege, attorney-client privilege, and work product privilege are properly excluded from the record. New York v. Salazar, 701 F. Supp. 2d 224, 236 (N.D.N.Y. 2010) (citations omitted).

At issue here is the deliberative process privilege, which shields the disclosure of inter- or intra-agency documents that are both "predecisional" and "deliberative."  Alloco Recycling, Ltd. v. Doherty, 220 F.R.D. 407, 411 (2004).  It is the government's burden to establish that materials withheld on the basis of deliberative process privilege fall within these parameters.  Conte v. County of Nassau, CV 06-47462009 U.S. Dist. LEXIS 41348, at *13 (E.D.N.Y. May 15, 2009) (citations omitted).    Even where the parameters are met, the deliberative process privilege can "evaporate" where a "party's cause of action is directed at the government's intent in rendering its policy decision and closely tied to the

underlying litigation." <u>Children First Found., Inc. v. Martinez</u>, 04-CV-0927, 2007 U.S. Dist. LEXIS 90723, 26-28 (N.D.N.Y Dec. 10, 2007) (privilege found to have evaporated where plaintiff claimed that decision makers engaged in and facilitated discrimination in rendering policy decision); <u>McPeek v. Ashcroft</u>, 202 F.R.D. 332, 335 (D.D.C. 2001) ("It is certainly true that this privilege yields when the lawsuit is directed at the government's subjective motivation in taking a particular action."); <u>State of New York v. Oneida Indian Nation of New York (Oneida II)</u>, No. 95-CV-0522, 2007 U.S. Dist. LEXIS 57469, at *41-42 (N.D.N.Y. Aug. 7, 2007) (where intent of compact was directly at issue, privilege did not apply to materials explaining government's intentions during negotiation process).

Affirmative requests for discovery are subject to a different analysis than are disputes over the propriety of privilege assertions.  Courts have recognized only a handful of "rare case" exceptions to the "record rule" that would allow for consideration of extra-record evidence.  These include: (1) where the movant has presented "a strong showing of bad faith or improper behavior by agency decision makers," <u>Citizens to Preserve Overton Park v. Volpe</u>, 401 U.S. 402, 420, 91 S. Ct. 814, 28 L. Ed. 2d 136 (1971); (2) where the court wishes to obtain background information as an aid to understanding highly technical matters, <u>Animal Defense Council v. Hodel</u>, 840 F.2d 1432, 1436 (9th Cir. 1988), or to determine the adequacy of the procedures and facts considered,  <u>Former Employees of Pittsburgh Logistics Sys., Inc. v. United States Sec'y of Labor</u>, 27 CIT 339, 343, 2002 Ct. Int'l Trade 21 (2003); and (3) when there is "such failure to explain administrative action as to frustrate effective judicial review." <u>Camp v. Pitts</u>, 411 U.S. 138, 142-43, 93 S. Ct. 1241, 36 L. Ed. 2d 106 (1973).

Where, as here, a party seeks consideration of extra-record materials based on alleged impropriety, naked assertions will not suffice to open the door to discovery; the

request must be supported by evidence. <u>Salazar</u>, 701 F. Supp. 2d 224, 240-41 (N.D.N.Y. 2010) (limited discovery justified where plaintiffs produced evidence of inappropriate lobbying, which they claimed led a high-ranking official to wrest control of decisionmaking from office that typically would consider the matter in order to ensure predetermined outcome).   The moving party carries the burden of demonstrating that discovery is warranted. Yet, "[w]hat constitutes a strong preliminary showing of bad faith or improper behavior . . . is a matter that the courts have been reluctant to define, preferring in the main simply to declare that on the facts of a given case, the showing has not, or occasionally has, been made." <u>Tummino v. Von Eschenbach</u>, 427 F. Supp. 2d 212, 230-31 (E.D.N.Y. 2006) (citations omitted).

**B.    Plaintiffs' Arguments**

      **1.    *Defendants' Alleged Non-Compliance with a Court Order***

Plaintiffs first contend that the Government has continued to withhold and redact documents relating to the M-Opinion based solely on deliberative process privilege, and they seek enforcement of this Court's prior order and/or additional discovery.  In a footnote, Plaintiffs list the record numbers for all documents they believe are wrongfully withheld. (Docket No. 45-1 at 3 fn. 3.)

The Court first notes that the DOI's amended privilege log identifies the vast majority of the documents in dispute as "draft response to NIGC" or "draft letter to NIGC."  (Docket No. 42-1.)   While Plaintiffs acknowledge that this Court did not direct production of documents relating to the DOI's letter to the NIGC, dated January 18, 2009, they now contend that when the DOI decided to issue an M-Opinion, it simply "converted the existing version of the letter into a memorandum," which makes those prior drafts discoverable. (Docket No. 45-1 at 8.)

In arguing for nondisclosure, Defendants state that "[e]very document that was created before January 12, 2009, related to the pre-decisional response of DOI to the NIGC's request for information concerning the NIGC's future decision on the Seneca Nation of Indians' gaming ordinance." (Docket No. 47 at 9.)  Thus, they distinguish drafts of the letter from drafts of Solicitor Opinion M-37023 on the ground that the M-Opinion is not specific to the Seneca Nation of Indians; but rather, an opinion of general applicability.

In response to this Court's prior order, Defendants supplemented the record with drafts of the M-Opinion.  In addition, they supplied emails and edits to the draft response letter to the NIGC which were authored by or sent to Edith Blackwell, whose conduct Plaintiffs question.  Although neither party bases their arguments on these additional documents, it seems the logical place to start.

The draft letter to the NIGC, edited by Blackwell (Docket No. 42-2 at AR000179-81), is a two-and-a-half page document that examines the applicability of Section 2719 to restricted fee land with reference to the SNI, the Seneca Nation Settlement Act, and former-Secretary Norton's prior interpretation of the statute in the context of an SNI land acquisition.  While the draft letter concludes that Congress's omission of restricted fee lands from the after-acquired land prohibition was purposeful, and the statutory language unambiguous, it provides no meaningful statutory construction.  Ultimately, this draft discussion did not find its way into the DOI's final letter to the NIGC.  Instead, the letter refers the NIGC "to the attached memorandum to the Secretary [*i.e.*, the M-Opinion], which includes a discussion regarding our conclusion that section 2719 does not pertain to restricted fee lands." (Docket No. 31-2.)

The M-Opinion is a six-and-a-half page document which focuses primarily on IGRA's framework, statutory construction, and the differences among trust lands and

restricted fee lands, with just a paragraph devoted to former-Secretary Norton's prior concerns and reasoning in the context of those discussions.

Comparing the draft letter (Docket No. 42-2 at AR000179-81) to the draft (*e.g.* Docket No. 42-2 at AR000333-336) and final M-Opinion (Docket No. 31-2 at AR000024-30) reveals that portions of the draft letter's recitation of Norton's earlier concerns and reasoning were incorporated into early drafts of the M-Opinion. However, that discussion does not predominate, and it is apparent from even the earliest drafts that the M-Opinion's focus was on the statutory construction the DOI engaged in with regard to various comments it had received on the proposed regulations. I also note that the M-Opinion's subject matter—the applicability of 25 U.S.C. § 2719 to restricted fee lands—requires some acknowledgment of the contrary Norton letter, even as an opinion of general applicability.

Having carefully considered the relevant record documents, I cannot agree that Defendants simply "converted the existing version of the letter into a memorandum," such that its essential character was not changed or altered. (Docket No. 45-1 at 8.) As this Court determined with regard to Plaintiffs' first discovery motion, the M-Opinion is postdecisional because it simply discusses and explains the reasons for DOI's change in position, while the letter is predecisional because it focuses on the SNI and Section 2917's applicability to the Buffalo Parcel—*i.e.*, to the decision not yet made by the NIGC. A review of the supplemental documents does not alter that assessment. Accordingly, I find that Defendants did comply with this Court's prior order and that no enforcement or further disclosure on this basis is warranted.

## 2.    *The Use of Private Email Accounts*

Plaintiffs next state that certain emails disclosed as part of the supplemental materials "reflect that the Solicitor's staff made extensive use of private email accounts while collaborating on the draft M-Opinion." (Docket No. 45-1 at 10.) They then argue that "it appears that the Government has not provided all of the private email exchanges in the administrative record" because certain emails have been produced only as part of a chain instead of from each sender's or recipient's individual "sent" box or "inbox." (*Id*. at 12-13.) Plaintiffs express concern over the potential to send, receive, and delete official communications outside of official channels and request that the Court direct the Government to provide, *inter alia*, "all emails addressed to or received from private email accounts referring or relating to the M-Opinion, the SNI's proposed ordinance for the Buffalo Parcel, or any other matter relevant to the NIGC's anticipated approval of the SNI's resubmitted third ordinance." (*Id*. at 16.)

In response to Plaintiffs' motion, Defendants submit the affidavit of Craig A. Littlejohn, Supervisory Information Technology Specialist, Department of Interior, who attests that DOI employees did not have remote internet access to their government email accounts until on or after March 26, 2010. (Docket No. 47-1.) The record emails with which Plaintiffs take issue were generated over the weekend of Saturday, January 17 and Sunday, January 18, 2009. According to Defendants, anyone working from their home or some other location during this weekend (or at any other relevant time period) had no alternative but to use a personal email account. Defendants note that numerous emails sent from private email accounts are included as part of the "complete certified administrative record[s]—in CACGEC II and CACGEC III." This, they urge, tends to show the completeness of the record, rather than the exclusion of documents. Finally,

Defendants explain that the reason for not including a copy of each email from all originator and recipient mailboxes was simply to avoid duplication.

It is well-settled that the government's designation of the record is entitled to a presumption of administrative regularity, and the court presumes that all materials considered in the decisionmaking process are included.  Advanced Tech. & Materials Co. v. United States, No. 10-00012, 2010 Ct. Intl. Trade LEXIS 60, at *13-14 (2010); Salazar, 701 F. Supp. 2d at 235.  Motions to supplement the record are granted only in limited circumstances, such as where the party seeking supplementation makes an evidentiary showing that the record is incomplete, and the documents it seeks to "add" to the record both exist and were before the decisionmakers.  Nat'l Mining Ass'n v. Jackson, Nos. 10-1220, 11-295, 11-0446, 11-0447, 2012 U.S. Dist. LEXIS 56595, at *14-16 (D.D.C. Apr. 20, 2012); Strich v. United States, No. 09-CV-01913, 2011 U.S. Dist. LEXIS 93932, at *9-10 (D. Co. Aug. 23, 2011); Salazar, 701 F. Supp. 2d at 235.

Plaintiffs have not successfully rebutted this presumption of completeness.  Their concerns notwithstanding, they have not pointed to any gap in email communications, or the M-Opinion record generally, that would suggest non-duplicative emails were inadvertently or intentionally excluded.  Accordingly, to the extent their motion seeks to "complete" the record, it is denied.

### 3.    *Agency Bad Faith or Improper Behavior*

As noted above, there are few justifications for obtaining discovery in cases involving APA review of administrative decisions.  Plaintiffs' principal argument for its request for supplementation of the record is Edith Blackwell's alleged improprieties.  Such discovery is warranted only where the record evidences a strong preliminary showing of improper conduct or influence that would overcome a presumption of regularity.

At the time of the DOI and NIGC decisions at issue, Blackwell held the position of Associate Solicitor, Division of Indian Affairs.[3]  As was discussed in this Court's decision on the first discovery motion, at all relevant times, Blackwell had a personal relationship with and is now married to Michael Rossetti, a former DOI employee who currently is a partner with Akin Gump Strauss Hauer & Feld LLP.  Absent authorization by the DOI's Ethics Office, Blackwell is recused from all matters that involve Akin Gump.  (Docket No. 39-1 at ¶2.)  The Akin Gump firm provides legal representation to the SNI.

Each of Plaintiffs' claims of improper conduct or influence by Blackwell is examined in turn.

In support of their request for discovery, Plaintiffs first point to Blackwell's edits to a Solicitor's Office document in which she discusses the factors the Section 2719 drafting team considered in concluding that the statute's gaming prohibition does not apply to restricted fee lands.  They urge that Blackwell could know these reasons only if she was personally involved in this aspect of the rulemaking.  I disagree.  Plaintiffs' assumption is not evidence, and it is equally plausible that Blackwell's knowledge of the factors the DOI considered came from a review of the rulemaking administrative record.

Plaintiffs next argue that Blackwell should not have participated in drafting the post-rulemaking M-Opinion because of her relationship to Rosetti and his connection to Akin Gump.  There is no dispute that she did participate, and both sides point to the following record email from Blackwell, dated January 12, 2009, in this regard:

> All – I have just talked to David [Bernhardt] about the restricted fee issue and the section 20 regs.  I would like to meet with all working on this issue in my office at 11:30.  By way of background, David called me this morning and asked that I clear with [Ethics Official] Melinda Loftin my working on a legal

---

[3] "The Division of Indian Affairs is part of the Office of the Solicitor.  Attorneys in the Division of Indian Affairs provide legal counsel to the Solicitor of the Department of the Interior, as well as the Bureau of Indian Affairs and the Assistant Secretary - Indian Affairs."  (Docket No. 32-2 ¶ 2.)

opinion regarding the decision made in the section 20 regulations regarding restricted fee.  I am not working on the Seneca litigation, but only this issue. Melinda cleared it because the issue applies to all tribes and not just the Seneca.  David would like us to develop a legal opinion for his signature regarding the application of 177 to tribally owned lands on and off the reservation.  He wants this legal opinion as soon as possible.  The 11:30 mtg will be to discuss the legal opinion.  Thanks. . . .Edith

(Docket No. 42-2 at AR000330.)

Plaintiffs urge that Blackwell's participation in the M-Opinion was improper because an issue that applies to all tribes necessarily applies to the SNI.  According to Plaintiffs, Blackwell and/or her spouse therefore had a financial interest in the M-Opinion, and Defendants have not shown that Blackwell made "full disclosure of the financial interest" as required by 18 U.S.C. § 208.[4]

Defendants argue that the adequacy of the DOI's ethics review, which Plaintiffs appear to question, is not the subject of Plaintiffs' Complaint and, so, is not part of the administrative record on this challenge to DOI rulemaking and NIGC decisionmaking. Although Defendants did submit Loftin's declaration to confirm that Blackwell had contacted her and received approval, they contend they are under no obligation to provide internal personnel documents unrelated to the subject of this action.

I agree with Defendants and find there is nothing in this sequence of events to warrant additional discovery.  Blackwell's superior requested that she contact the Ethics

---

[4]  This criminal statute relates to government employee conflicts of interest:

(a) Except as permitted by subsection (b) hereof, whoever, being an officer or employee of the executive branch of the United States Government, or of any independent agency of the United States, . . . participates personally and substantially as a Government officer or employee, through decision, approval, disapproval, recommendation, the rendering of advice, investigation, or otherwise, in a judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, or other particular matter in which, to his knowledge, he, his spouse, minor child, general partner, organization in which he is serving as officer, director, trustee, general partner or employee, or any person or organization with whom he is negotiating or has any arrangement concerning prospective employment, has a financial interest--

Shall be subject to the penalties set forth in section 216 of this title [18 USCS § 216].

Office to determine if she could work on a legal opinion that would give the reasons for a decision the DOI already had made.  Blackwell did as she was asked, as confirmed by the DOI's Ethics Official who approved her participation.  There is no suggestion on this record that Blackwell's actions in this regard were improper or taken in bad faith.  And it is not, as Plaintiffs suggest, Defendants burden to prove that matters outside the administrative record should not be discoverable.  Rather, it is Plaintiffs' burden to come forward with evidence sufficient to make a strong preliminary showing of impropriety.  They have not done so here.

Finally, Plaintiffs urge that the supplemental administrative record calls into question George T. Skibine's averment that Blackwell was not involved in the decisionmaking process relative to the applicability of Section 2719 to restricted fee land.  This is of significance because, as this Court recognized in <u>CACGEC II</u>, 2008 U.S. Dist. LEXIS 52395, at *128 n. 49 (W.D.N.Y. July 8, 2008), and the NIGC recognized in its January 20, 2009 letter approving the SNI's gaming ordinance (Docket No. 24-2 at AR000012), the DOI's changed position on the applicability of Section 2719 to restricted fee land affects only one tribe—the Seneca Nation.

Skibine's declaration states, in relevant part:

5.      As the Director of the Office of Indian Gaming, I had primary responsibility for the Department's Section 20 rulemaking activities. . . . During the course of our rulemaking activity, I held numerous meetings with Department staff in order to develop the text of the regulations.  These meetings often included attorneys from the Department's Office of the Solicitor, who provided me with legal advice.

6.      During the period in question, Edith Blackwell . . . was involved in developing the legal advice on the Section 20 regulations provided to me by the Solicitor's Office.  However, she did <u>not</u> participate in one aspect of the rulemaking—the interpretation that Section 20 does not apply to restricted fee lands.  She informed me that she would not participate in that aspect of the rulemaking in order to avoid even the appearance of impropriety.  Whenever the issue of restricted fee lands arose during discussions of other

aspects of the rulemaking, Ms. Blackwell would excuse herself from the room.

7.    It was my decision to include a definition of *newly acquired lands* within the final Section 20 regulations that referenced only lands taken into trust after October 17, 1988, and to exclude from that definition any newly created restricted fee lands.  In making that decision, I received legal advice from attorneys with the Office of the Solicitor, but not from Edith Blackwell.

(Docket No. 39-2 ¶¶ 5-7.)

Plaintiffs point to three entries in Defendants' Supplemental Privilege Log (Docket No. 33-1), listing Blackwell as a document author or recipient, and urge that these documents reflect Blackwell's involvement in the portion of rulemaking relating to restricted fee lands.  Defendants contend that Plaintiffs posit nothing more than the same type of general references that this Court found insufficient, on Plaintiffs' earlier motion, to call Skibine's statement and Blackwell's conduct into question.  Here, I disagree.

On October 7, 2010, Plaintiffs' counsel wrote to Defendants asserting entitlement "to the production of the administrative record for the revised regulations, insofar as it relates to the applicability of the Section 2719 prohibition to trust and not restricted fee land." (Docket No. 37-16 at 2.)  In response, Defendants wrote that "DOI is currently in the process of identifying any documents that might pertain to your . . . request [for] the portion of the administrative record for the regulations . . . that relates to the applicability of Section 2719 to trust and not restricted fee lands under the new regulations." (Docket No. 37-17 at 1.)  On December 1, 2010, Defendants filed a supplemental record and privilege log responsive to Plaintiffs' request, which indicates that Blackwell sent and received communications on the precise issue Skibine attests she had no involvement in and in which she indicated it would be improper for her to participate.  (Docket No. 33.)  Thus, it is Defendants' own documents that call Skibine's declaration into question.  This is sufficient, at least, to raise a question of improper influence in the decisionmaking process.

Given the limitations on discovery in APA cases, the Court must consider what remedy is appropriate.  In their motion, Plaintiffs ask the Court to authorize discovery "to include at a minimum" certain specific disclosure.  The only relevant item expressly sought is "all documents, including those withheld on deliberative process privilege grounds, reflecting Blackwell's involvement in the DOI's reversal of its position on the applicability of Section 2719 to restricted fee land."  (Docket No. 45-1 at 25.)  Documents that may be responsive to this request are identified in Defendants' supplemental privilege log as BIA-AR003736-37, 3747, and 3748-51.

Defendants ask that the Court review any currently withheld documents *in camera*, or place documents it determines should be disclosed under seal.  Plaintiffs contend these actions are, respectively, unnecessary and inappropriate.  The supplemental privilege log describes the content of the at-issue documents in a very general manner.  In this Court's view, the most prudent course is to review the documents *in camera* to determine, first, whether they should be provided to Plaintiffs and, second, whether any protections to disclosure should attach.

## IV.  CONCLUSION

For the reasons stated above, Plaintiffs' Motion is granted in part, and denied in part.  Defendants shall deliver to chambers for *in camera* review the documents specified in this decision.

## V.  ORDERS

IT HEREBY IS ORDERED that Plaintiffs' Motion for an Order to Enforce, to Expand the Administrative Record and for Discovery (Docket No. 45) is GRANTED IN PART and DENIED IN PART;

FURTHER that Defendants shall, within 5 business days after the date of this Decision and Order, deliver to chambers for *in camera* review documents BIA-AR003736-3737, 3747, and 3748-3751.

FURTHER that counsel shall appear before the undersigned for a Status Conference on July 25, 2012 at 11:00 a.m.


      SO ORDERED

Dated:      June 23, 2012
            Buffalo, New York


                              /s/William M. Skretny
                             WILLIAM M. SKRETNY
                                 Chief Judge
                      United States District Court